Case 58—PETITIONS EQUITY—June 5.

# Franklin County Court, &c., v. Deposit Bank of Frankfort.

## Same v. Bank of Kentucky.

## Same v. Farmers' Bank of Kentucky.

## City of Frankfort v. Bank of Kentucky.

## Same v. Farmers' Bank of Kentucky.

1. LAWS IMPAIRING OBLIGATION OF CONTRACTS.—The State possesses the power to make, for a valuable consideration, a binding contract, and with respect to her own contracts she stands upon precisely the same footing that she does with respect to contracts made between individuals, in so far that she can not pass any law impairing their obligation.

2. TAXATION OF CORPORATIONS—CONTRACT BY STATE WITH CORPORATION.—The charter of a corporation, created by an act of the Legislature, providing that the corporation, in consideration of paying to the State a specific tax or bonus, is to be released from the payment of all other taxes, constitutes a binding contract, from which the State can not recede without the consent of the corporation, unless the State, in making the contract, expressly reserves the power to alter or amend it, or unless there is a general law in force, at the time, which authorizes the State, by subsequent legislation, to alter or amend it, and nothing appearing in the charter showing that the general law is not to govern.

3. SAME.—Such a contract exempts the corporation from the payment of city and county taxes, as well as from the payment of any other tax to the State, the city and county being parts of the State, and having no power to levy and collect taxes without authority from the State.

4. SAME—EXTENSION OF CHARTER.—An act of the Legislature continuing the charter privileges and rights of a corporation beyond the time fixed by the original act of incorporation for their existence does not have the effect of creating a new charter, but merely extends the life of the one already in existence, and, therefore, the act of February 14, 1856, by which the Legislature reserved the right to alter and amend, at pleasure, charters thereafter granted, does not apply to acts extending charters granted prior to the act of 1856.

5. SAME—TAXATION OF BANKS.—Even if the acts extending the charters of the Bank of Kentucky and the Farmers' Bank of Kentucky, which acts of extension were passed since the act of 1856, can be regarded as creating new charters, it is manifest, from the obligations imposed by the acts of extension and from the nature of the business of these corporations, although not expressed in so many words, that it was the intention, by each of these acts, to continue in force an irrevocable contract, and that the first section of the act of 1856 should not apply.

6. SAME.—The Deposit Bank of Frankfort was chartered in 1863, no specific tax being agreed on in the charter, thus subjecting that bank to the tax of fifty cents on each one hundred dollars of its stock fixed by the general law then in force. By an act passed in 1871, it was provided that the tax then paid by that bank should be "in full of all taxation." By an act passed in 1882 the charter, together with the amendment, was continued in force for twenty years. *Held*—That the act of 1871 exempts the Deposit Bank from the payment of any other tax, whether county or State, and even if a general act passed in 1876, in the light of the act of 1856, could ordinarily be regarded as repealing this exemption, the act of 1882 continuing the act of 1871 in force shows that it was the intention of the Legislature that the act of 1876 should not apply to that bank.

7. SAME.—The capital stock of a bank and the shares of capital are distinct things, and both may be taxed. So also the franchise, the surplus earnings and the real estate are things distinct from the capital stock and from each other, and the State may tax the bank under each of these heads without being guilty of imposing double taxation.

IRA AND W. H. JULIAN AND JOHN W. RODMAN FOR APPELLANTS.

1. THERE WAS NO POWER IN THE LEGISLATURE TO GRANT ALLEGED EXEMPTION.

(a.) Taxation must be equal and uniform. (State and Federal Constitutions; R. Tax Cases v. Commonwealth, Ky. Law Rep., vol. 5, 451.)

(b.) Private property cannot be taken for public use without just compensation. (Constitution of Kentucky, article 13, section 14; Lexington v. McQuillan's Heirs, 9 Dana, 517.)

(c.) Exclusive privileges cannot be granted except in consideration of public services. (Constitution of Kentucky, article 13, section 1; Barbour v. Board of Trade, Ky. Law Rep., vol. 6, 769, principal and dissenting opinions.)

2. THERE WAS NO INTENTION ON THE PART OF THE LEGISLATURE TO EXEMPT. (Kentucky Central R. Co. v. Bourbon County, Ky. Law

Franklin County Court, &c., v. Deposit Bank of Frankfort.

Rep., vol. 6, 495; O. & A. R. R. Co. v. City of Alexandria, 17 Grattan (Va.), 181; State of Delaware v. Bank of Smyrna, 2 Houston's Reports, 99; Gordon v. Appeal Tax Court, 15 Curtis, 338; Bank of Commerce v. State of Tennessee, etc., Ky. Law Rep., vol. 4, 137.)

3. EXEMPTION (IF ANY) EXPIRED WITH ORIGINAL CHARTERS. (Desty on Taxation, vol. 1, page 142; State of Delaware v. Bank of Smyrna, 2 Houston's Reports, 99; Gordon v. Appeal Tax Court, ' 15 Curtis, 338.)

Banks, ever since 1852, have been required to pay taxes under the Revised and General Statutes, not under their charters: General Statutes, chapter 92, article 2, section 1; Revised Statutes, chapter 83, article 2, section 1; Lou. Savings Bank v. Commonwealth, 14 B. M., 329.

4. ACT OF MARCH 17, 1876, REPEALED EXEMPTION (IF EVER CONFERRED). (Act March 17, 1876, General Statutes, page 881; Lincoln County Court v. L. & N. R. Co., 6 Ky. Law Rep., vol. 3, 436; Turnpike Co. v. Commonwealth, Ky. Law Rep, vol. 6, 392; Water Co. v. Hamilton, Ky. Law Rep., February, 1884.)

(a.) Shares of stock exempt: General Statutes, chap. 92, art. 1, sec. 5; and art. 12, sec. 8, of same chapter; L. & N. R. Co. v. Com., 1 Bush, 250.

(b.) Acts of renewal are new charters: Citizens' Gaslight Co. v. Lou. Gas Co., Ky. Law Rep., vol. 5, 72.

(c.) Right of repeal reserved: Act February 14, 1856; Griffin v. Ky. Ins. Co., 3 Bush, 595.

(d.) All doubt resolved in favor of the tax: Ky. Central R. Co. v. Bourbon County, Ky. Law Rep., vol. 6, 495; 'Amer. and Eng. R. Cases, vol. 7, 328.

5. When said act of March 17, 1876, was adopted, neither of the charters in controversy was an *irrevocable contract* between the bank and the State.

The Deposit Bank was originally chartered since February 14th, 1856, and the charters of both the other banks had been renewed subsequently to February 14, 1856, and prior to act of March 17, 1876, without any express exception of either of the banks from the power reserved in 1856. The act of March 17, 1876, was adopted in view of, and in pursuance of, the power reserved in 1856, and by its terms and clear intent applies to all of the appellees. In case of the Farmers' Bank the right of repeal was expressly reserved in the charter. (Griffin v. Ky. Ins. Co., 3 Bush, 595; Hoge v. Railroad Co., 99 U. S., 351.)

WM. LINDSAY FOR CITY OF FRANKFORT.

1. Statutes of exemption from taxation are to be strictly construed, and exemptions are not to be extended by judicial construction to embrace

Franklin County Court, &c., v. Deposit Bank of Frankfort.

other property than that which is plainly expressed in the law. (Desty on Taxation, vol. 1, p. 108.)

The taxing power of the State is never presumed to be relinquished unless the intention to relinquish is expressed in clear and unambiguous terms.   (Bradley v. McAtee, 7 Bush, 667; L., C. & L. R. R. Co. v. Commonwealth, 10 Bush, 48; Providence Bank v. Billings, 4 Peters, 514.)

2. The bonus of fifty cents paid by the cashiers of the banks upon each share of stock is not a tax upon the banks but upon the share-holders. (Louisville Savings Bank v. Commonwealth, 14 B. M., 329; National Bank v. Commonwealth, 9 Wall., 353; Van Allen v. The Assessors, 3 Wall., 573; Bradley v. The People, 4 Wall., 459; Trustees of Eminence v. Deposit Bank, 12 Bush, 538.)

Therefore, the exemption or commutation is for the benefit of the share-holders, who are taxed, and not for the benefit of the bank, which is not taxed.

The result of this is, that the taxable property of the two banks, like the taxable property of individuals, is open to local taxation, each and every species, within its particular classification, thus producing uniformity in taxation.   (Bank v. Tennessee, 104 United States, 493.)

The case of Farmers' Bank v. Greenup Co., 6 Bush, 127, should be overruled.

3. Where a tax is levied upon land, no appropriated land within the limits of the State can be constitutionally exempted unless the owner be entitled to such immunity in consequence of public service.   (McQuillan's Case, 9 Dana, 517.)

HUGH RODMAN on same side.

The acts of the General Assembly attempting to exempt appellees from the payment of all taxes, except the fifty cents on each hundred dollars of stock, is unconstitutional and void, because contrary to the first section of the thirteenth article of the Constitution of this State. (The Railroad Tax Cases v. Commonwealth, 5 Ky. Law Rep., 451; 9 Dana, 513; 12 Bush, 570; Ky. Cent R. R. Co. v. Bourbon County, 6 Ky. Law Rep., 497; Bailey v. Maguire, 22 Wall., 227; Bank v. Tennessee, 14 Otto, 493; 12 Bush, 110; Smith v. Warden, 4 Ky. Law Rep.; Barbour, Sheriff, v. Louisville Board of Trade, 6 Ky. Law Rep.; Farmers' Bank v. City of Henderson (Superior Court), 7 Ky. Law Rep.; 12 Wend., 544.)

D. W. LINDSEY for BANK OF KENTUCKY.

1. The provision of the bank's charter exempting it from all other taxation in consideration of its payment into the State Treasury of fifty cents on each one hundred dollars of stock held and paid for in the

Franklin County Court, &c., v. Deposit Bank of Frankfort.

corporation exempts it from municipal as well as State taxes. (Farmers' Bank of Ky. v. Greenup County, 6 Bush, 127; Covington City National Bank v. City of Covington, 21 Fed. Rep., 487; Johnson v. Commonwealth, 7 Dana, 342; Trustees of Eminence v. Deposit Bank, 12 Bush, 540; E. & P. R. R. Co. v. Trustees, 12 Bush, 235; Desty on Taxation, vol. 1, p. 155.)

2. The immunity asserted by the bank is not an exemption from taxation, but a right obtained by regular contract for an adequate and full consideration, and the Legislature has no power to pass any law impairing the obligation of that contract. (Wendover v. City of Lexington, 15 B. M., 264; Gordon, &c., v. Appeal Tax Court, 3 How., 133; Farrington v. Tennessee, 95 U. S., 679; Union Bank v. State, 9 Yerg. (Tenn.), 490; Bank of Cape Fear v. Edwards, 5 Ired. (N. C.) L., 516; Bank of Commerce v. Tennessee, 104 U. S., 493; 16 How., 369; Desty on Taxation, vol. 1, pp. 145, 146, 147 and 137.)

The Legislature are the sole judges as to what amount of consideration will justify such a grant. (Barbour, Sheriff, v. Louisville Board of Trade, 82 Ky., 645.)

3. Neither the act of 1876 nor the city charter enacted in 1869 repealed the provision of the bank's charter discharging it "from the payment of all and every other tax." Repeals by implication are not favored. (Desty on Taxation, vol. 1, p. 105; Brown's Legal Maxims, p. 28-9; E. & P. R. R. Co. v. Elizabethtown, 12 Bush, 237; Adams Express Co. v. Lexington, 7 Ky. Law Rep., 716.)

4. The act of 1858, extending the bank's original charter, is, like the original charter itself, an inviolable contract which the State has no power to impair. The act of 1856, reserving the power to amend or repeal such charters does not apply, as the terms of the act of 1858 exclude the right of the State to revoke at pleasure. (Desty, vol. 1, p. 144; New Jersey v. Yard, 95 U. S., 104.)

5. The real estate owned by the bank is held by it under express authority of its charter, and is exempt from city and county taxation by virtue of the charter provision heretofore referred to.

6. The tax of fifty cents required to be paid by the bank is a tax upon the corporation and not upon the share-holders, and, therefore, the commutation is for the benefit of the corporation. (Trustees of Eminence v. Deposit Bank, 12 Bush, 538; Farmers' Bank v. Greenup County, 6 Bush; Commercial Bank v. Tennessee, 104 U. S.)

A. DUVALL FOR FARMERS' BANK OF KENTUCKY.

1. By a compliance with section 15 of its charter, the Farmers' Bank is discharged from the payment of all and every other tax. (Farmers' Bank of Ky. v. Commonwealth, and Greenup Co., 6 Bush, 127; City National Bank v. City of Covington, 21 Fed. Rep., 487.)

2. The bank acquired rights and privileges by its charter which no legis-

Franklin County Court, &c., v. Deposit Bank of Frankfort.

lation, without its consent, can impair or diminish. Its charter was a complete contract, and the consideration was not only valid but ample. (Wendover v. City of Lexington, 15 B. M., 258; L., C. & L. R. R. Co. v. Commonwealth, 10 Bush, 47; 16 How., 369; 7 Dana, 338; 95 U. S., 679.)

3. No *intention* to repeal or abrogate *any* provision of the charter of the Farmers' Bank is to be found in the act of March 17, 1876.

4. A statute can be repealed only by an express provision of a subsequent law, or by *necessary* implication. There must be such a positive repugnancy between the provisions of the statutes that they can not stand together or be consistently reconciled. (Eliz. & Pad. R. R. Co. v. Trustees of Elizabethtown, 12 Bush, 235; Foreman, &c., v. Murphy, &c., 7 Bush, 303.)

5. The extension of the charter of the Farmers' Bank is unrestricted, and embraces every right and privilege, as well as every duty and liability, which was conferred or imposed by the charter.

W. LINDSAY AND FRANK CHINN FOR APPELLEE IN CASE OF FRANKLIN COUNTY COURT v. DEPOSIT BANK

1. The stock of the bank represents its indebtedness rather than its property; and the tax or bonus which the bank is required to pay to the State is a tax upon the share-holders and not upon the bank. (Trustees of Eminence v. Deposit Bank, 12 Bush, 538; Morawetz on Corporations, sec. 343; Louisville Savings Bank v. Commonwealth, 14 B. M., 329; National Bank v. Commonwealth, 9 Wallace, 353.)

Therefore, the stock of the bank is not to be treated as corporate property for the purposes of county taxation under the act of 1876, and if by that act it can be required to list its bills, bonds, etc., under the equalization law, it is entitled to deduct therefrom the amount of its capital stock as indebtedness. Otherwise, the stock of the bank will be taxed in the face of the legislative declaration that the bonus paid the State shall be in full of all taxation.

2. The act of 1876 is to be read in connection with the charter of the Deposit Bank. The general act is not to be taken to repeal or change the local or private act. (Commonwealth v. Cain, 14 Bush, 533.) And the act of 1882 extending appellee's charter either thus interpreted the act of 1876 or else declared that it should not thereafter be enforced against the Deposit Bank.

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

The Franklin County Court, appellant, having assessed, for county taxation, all the corporate property in Franklin county of the appellees, including their

notes, bonds, bills, money and choses in action, the appellees brought their separate actions of injunction against the appellant for the purpose of enjoining the collection of said tax.

The City of Frankfort, appellant, having assessed the real estate of the appellees, within the corporate limits of Frankfort, for the purpose of taxation, the appellees brought separate actions of injunction against the appellant for the purpose of enjoining the collection of said tax.

The lower court having perpetuated the appellees' injunction in each action, the appellants have separately appealed to this court.

It is agreed that the cases may be heard together. They will be noticed in the order in which they stand.

FRANKLIN COUNTY COURT v. THE BANK OF KENTUCKY.

The appellee, The Bank of Kentucky, was chartered in 1834 by an act of the Legislature of this State. This incorporating act provides that the appellee shall have and keep its principal office of discount and deposit in the city of Louisville; and it shall be the appellee's duty to establish not less than four, nor more than six branches, and one branch shall be located at the seat of government, "to aid in the management of the fiscal affairs of the State." The act authorizes the appellee to have "a capital stock of five millions of dollars, divided into shares of one hundred dollars each;" that the amount of capital that "shall be employed at the principal bank and at the several branches shall be under the con-

trol of the president and directors of the principal bank;" that the appellee shall have "full power and authority to acquire, hold and enjoy such real estate as shall be convenient for the transaction of its business, or which may be received in discharge of any debt, or purchased in satisfaction of any judgment or decree in favor of the bank, or in the purchase of any property on which the said bank may have a lien." The fifteenth section provides: "That it shall be the duty of the cashier of the principal bank, on the first day of July, 1836, and on the first day of July in each succeeding year, during the continuance of this charter, to pay to the Treasury of this Commonwealth twenty-five cents on each one hundred dollars of stock held and paid for in said bank, which shall be in full of all tax or bonus; provided, that the Legislature may increase or diminish the same; but at no time shall the tax exceed fifty cents on each one hundred dollars of stock paid for in said bank"

In 1837, the Legislature fixed fifty cents as the sum that the appellee should pay into the Treasury on each one hundred dollars of its capital stock, "which shall be in full of all tax or bonus." By the act of 1834, the appellee's charter was to continue in force until the first day of October, 1864.

The Legislature, by an act approved February the 15th, 1858, enacted that the chartered privileges and rights of the appellee should continue in force for twenty years from the first day of October, 1864. "But said extension of the charter of said bank shall be subject to the following restrictions and provisions:"

1. It shall be subject to all the limitations, conditions and duties imposed upon it by the act of incorporation. * * * *

3. After this act of extension takes effect, the amount of circulation shall not be greater than the amount of capital actually paid in. * * *

4. The appellee shall establish a branch at the town of Columbus, Kentucky, with a capital of one hundred and fifty thousand dollars. * * * *

5. The appellee shall, within a year from the tenth day of May, 1858, by a vote of a majority of its stockholders, determine whether it will accept the "proposed extension," and if it determines to accept it, it shall notify the Governor of the Commonwealth of the acceptance by the certificate of its president and directors; and this act shall be in force from that date.

The sixth section provides, that the appellee "shall pay, annually, to the Commissioners of the Sinking Fund, fifty cents upon each one hundred dollars of the contingent fund now held, or which may hereafter accrue to said bank, over and above the amount now required to be retained by its charter."

By an act of the Legislature, approved February the 1st, 1872, the appellee was authorized to purchase from the Commonwealth the stock which she owned in its bank. But the "bank shall annually, on the first day of January, pay into the Treasury a tax of fifty cents on each share of one hundred dollars of its increased capital stock, which shall be in full of all tax or bonus on such increased capital stock."

The fifth section provides: "That the charter of

the Bank of Kentucky be, and the same is hereby, extended twenty-five years."

The appellant's first contention is, that the Legislature had no constitutional power to exempt the appellee from the common burden of taxation, except "in consideration of public services." It contends that the exemption of the appellee from all taxation, except fifty cents on each one hundred dollars of its capital stock, was not "in consideration of public services," and, therefore, void.

At the time the appellee was chartered, and for years afterwards, the Federal Government issued no paper currency. Banks and banking were creatures of the respective States. It was the policy of this Commonwealth to charter banks, with authority to issue paper currency, based upon a gold and silver redemption, upon the demand of the holder. The issue of these banks constituted, in the main, the circulating medium in the Commonwealth for individual, commercial and public uses. While the aggregation of capital for banking purposes was, on the part of the projectors, for the purpose of individual gain, yet the Commonwealth accepted the overture as auspicious to the purpose of furnishing a currency as stable as, in the nature of things, it could be made, for the private, commercial and public benefit of her citizens ; also to aid her in the management of her fiscal affairs, which not only consisted in the providing of means to meet the ordinary administration of State affairs, but sometimes extended, at least might extend, to the borrowing of money to meet any extraordinary or unforeseen emer-

gency.   Therefore, we should hesitate to decide, were it material to decide the question, that the granting of the charter to the appellee, and the fixing of a specific tax of fifty cents on each share of its capital stock, was not in consideration of public services. But the right of the State to grant the charter to the appellee, and exempt it from the payment of all taxes, except fifty cents on each share of its capital stock, rests upon the power of the State to make, for' a valuable consideration, a valid and irrevocable contract.

The State of Kentucky, in the management and control of her affairs, in her relation to the other States, and in her relation to the Federal Government, except in so far as certain powers are delegated by the Constitution of the United States to the Federal Government, or are denied to the States, is sovereign by right.   It is by virtue of her sovereignty that she has the power to contract.   No binding contract can be entered into, except by virtue of sovereign power.   It is by this power that the State makes con- tracts with individuals, that she borrows money and gives her obligation for its payment.   To deny a State the power to make binding contracts, is a denial of its power as a sovereign.

Possessing the sovereign power to contract, she ex- ercises the right just as an individual exercises his. The individual, in exercising the right of contracting, does not barter away his sovereignty; he, for a val- uable consideration, simply exercises it; for a valua- ble consideration coming to him from the other party to the contract, he surrenders something, and receives

something in its stead which he deems an equivalent. Whether the one or the other has, in fact, received an intrinsic equivalent for that with which he has parted, is not the question. The fact that it is of more or less value, and deemed by him to be an equivalent, is all that is required to make the contract irrevocably binding. In thus contracting, he does not surrender his sovereign power ; he merely exercises it. Upon precisely the same principle the Commonwealth contracts. If her contract is without any valuable consideration, it is a *nudum pactum;* so is that of the citizen ; but if there is a valuable consideration to support it, she is bound by it, not upon the idea that she has surrendered or bartered away her sovereignty, but that she has exercised it in accordance with what she deems to be for the best interest of her citizens. The State, possessing the power to make, for a valuable consideration, a binding contract, falls within that provision of the Federal Constitution that declares that she shall pass no law impairing its obligation. In respect to her contracts, she stands upon precisely the same footing that individuals do in reference to their contracts—she shall pass no law impairing their obligation. In accordance with the foregoing views, the Supreme Court of the United States, ever since the Dartmouth College Case, 4 Wheaton, 518, have consistently held that the creation of a corporation, especially banks, by the Legislature of a State, whereby it was agreed that the corporation, in consideration of paying to the State a specific tax or bonus, was to be released from the payment of all other taxes, constituted a bind-

ing contract, from which the State could not recede without the consent of the corporation; unless the State, in making the contract, expressly reserved the power to alter or amend it; or unless there was a general law in force, at the time of making the contract, which authorized the State, by subsequent legislation, to alter or amend it, and that there was nothing appearing in the legislative act of the contracting parties showing that the general law should not govern it. (State Bank of Ohio v. Knoop, 16 Howard, 369; New Jersey v. Yard, 95 U. S., 104; Farrington v. Tennessee, 95 U. S., 679.) This doctrine is so firmly rooted by the decisions of the Supreme Court of the United States, and so uniformly recognized by the courts of last resort of all the States, that a decision by us holding the contrary would be regarded as eminently sporadic.

Does the provision in the appellee's charter and amendments, declaring that the payment of fifty cents on each one hundred dollars of its capital stock "shall be in full of all tax or bonus," exempt the appellee from the payment of county or city taxes? The appellant contends that it does not.

It may be regarded as settled by the current of authority, and for the purpose of this investigation we will concede that it is so settled, that the appellee's capital stock and the shares of its stock are distinct things. That the capital stock is the money authorized to be paid in, and actually paid in, as the basis of the business of the bank, and the means of conducting its operations. The bank cannot increase or diminish this capital stock without express authority

to do so ; for the reason that it constitutes a trust fund which is held by the appellee as trustee, first, for the purpose of meeting and making good its liabilities ; second, after discharging its obligations, for the benefit of its stockholders. The shares of the capital stock are represented by certificates. Each holder is a beneficiary to the extent of his ownership. But he cannot control or withdraw a dollar of the principal ; that must remain as the basis of the appellee's business operations. The share-holder is entitled only to share in the profits. So, the capital stock and the shares of the capital stock are distinct things, and both may be taxed. So, also, the franchise—the right of the bank to exercise its powers in the prosecution of its business as a distinct right from its capital stock—may be taxed. So, also, its surplus earnings, being distinct from its capital stock, may be taxed. So, also, its real estate, if it does not represent its capital stock, but only its earnings, which are not a part of its capital stock, may be taxed. (Angell and Ames on Corporations, sections 556, 557 ; Bradley v. The People, 4 Wall., 459; National Bank v. Commonwealth, 9 Wall., 353.)

If, when the State granted to the appellee its charter, she had been silent as to her right to tax it, she would have the absolute right to tax it, under the foregoing heads, without being amenable to the objection of being guilty of imposing double taxation. Nor could it be successfully maintained that the appellee would not be liable to be taxed by the appellant, the county court, under the act of the seventeenth of March, 1876, and by the appellant, the city of Frankfort, under its charter. But the State did not chose to be silent. It did speak.

It said, that in consideration of the appellee paying into the treasury fifty cents on each one hundred dollars of its capital stock paid in, without reference to its real value, such payment should be "in full of all tax or bonus." To say that this language has reference to the capital stock of the appellee, and not to the shares of its stockholders, or *vice versa*, or that it has no reference to the real estate of the appellee, acquired and used in its legitimate business, would be to torture the meaning of language. The State agrees that, in consideration of receiving fifty cents on each one hundred dollars of the appellee's capital stock paid in, the same shall be in full of all tax or bonus. It is conceded that this language binds the State to make no other assessment. And well may the concession be made; because, regarding the fifty cents in the light of a payment on the stock as capital stock proper, or as the stockholders' shares, yet, the contract says that the payment "shall be in full of all tax or bonus." Also, regarding the appellee's real estate as a separate subject of taxation (and so is the capital stock and the shares), yet, the contract says that the payment of the fifty cents shall be in full of all taxation. If any part of the appellee's property, its franchise, its capital stock, or the shares of its capital stock, or its real property used in the operation of its business, is to be taxed in addition to the fifty cents, then it cannot be truthfully said that the payment of the fifty cents is "in full of all tax or bonus." As before said, it is conceded that the terms of the contract bar the State from imposing any additional taxation. But it is contended that its terms do not bar the county and city

from levying and collecting taxes for county and city purposes. In this position counsel clearly overlook the fact that the county and city are integrant parts of the State, and that they can not levy and collect taxes without the authority of the State conferring that right upon them. So the absurdity is presented that the State contracts with the appellee, in consideration of its paying fifty cents on each one hundred dollars of its capital stock, to release it of "all tax or bonus"— this is the meaning of the language—and at the same time authorizes its local subdivisions to levy and collect other taxes off of the appellee. That is to say, that the State, by its contract with the appellee, deprives itself of the right to levy and collect other taxes off of the appellee, but may, notwithstanding, authorize all of its subdivisions, if the appellee's property and business were distributed in all of them, to levy and collect other or additional taxes off of it. It seems that it would occur to one at first blush that such a procedure would be a palpable violation of the contract. " Under such a contract between individuals, a doubt could not exist." The State, when she makes a contract, based upon a valuable consideration, stands upon precisely the same footing.

In the Bank of Cape Fear v. Edwards, 5 Ired., 516, where the charter provided that the bank should pay annually into the treasury of the State twenty-five cents on each share of its stock owned by individuals, and that the bank should not be liable to any further tax, it was held that the bank was liable to no other tax, State or county. See also Farrington v. Tennessee, 95 U. S., 679, and New Jersey v. Yard, 95 U. S.,

104, and the authorities there cited. Also, in the case of the Farmers' Bank (one of the present appellees) v. Commonwealth and Greenup County, 6 Bush, 127, where the bank's charter provided that the annual payment into the State Treasury of fifty cents on each one hundred dollars of the bank's capital stock "shall be in full of all tax or bonus," it was held that said provision exempted the bank from the payment of all other tax, whether State or county, including the bank's real estate purchased for debt.

The appellant's next contention is, that if the appellee's charter exempted it from all taxation, except that therein provided for, the same expired on the first day of October, 1864, and the act of the fifteenth of February, 1858, extending the charter for twenty years, created a new corporation, which the Legislature, under the act of February 14, 1856, reserved the right to amend at pleasure, and that the act of the seventeenth of February, 1876, authorizing counties that levied and collected ad valorem taxes, to assess banks and other corporations within said counties, operated as a valid amendment of the appellee's charter, to the extent of authorizing the collection of said taxes.

The act of the fourteenth of February, 1856, provides: "Section 1. That all charters and grants of or to corporations, or amendments thereof, and all other statutes, shall be subject to amendment or repeal at the will of the Legislature, unless a contrary intent be therein plainly expressed: Provided, That whilst privileges and franchises so granted may be changed or repealed, no amendment or repeal shall impair other rights previously vested.

"Section 3. That the provisions of this act shall only apply to charters and acts of incorporation to be granted hereafter."

There is a broad distinction between the extension of a charter and the grant of a new one.   An act which continues the life of a charter to a period beyond the time fixed in the charter for its expiration, and reserves the corporate organization, privileges, powers, duties and rights, is an extension of the charter.   Thus extended, it is the same charter, with a continued lease of life, under which the organization must be kept up ; to which the company must look for its powers, privileges and rights ; by which it is to be governed and controlled.   The act of extension relates back to the date of the charter.   The Legislature and the company are presumed to have contracted for the extension with reference to that period of time, when the respective rights of the contracting parties were agreed on ; which agreement, in consideration of the continuous discharge of the obligations therein expressed, is to be continued beyond the time first agreed on.   (Angell and Ames on Corporations, section 780 ; People v. Marshall, 1 Gilman, Ill. Rep., 672 ; Exeter Bank v. Rogers, &c., 7 N. H., 32 ; Kennebec Bank v. Richardson, 1 Greenleaf, 72.)

Here, the Legislature, by the act of fifteenth of February, 1858, continued the chartered privileges and rights of the appellee twenty years from the first day of October, 1864.   This extension did not have the effect of creating a new charter, but merely extended the life of the one which was already in existence. Therefore, the act of the fourteenth of February, 1856,

does not apply; for the third section expressly pro-
vides that the act shall only apply "to charters and
acts of incorporations to be granted" thereafter.

Conceding, however, that the act of fifteenth of Feb-
ruary, 1858, creates a new charter, was it not the inten-
tion of the Legislature, "plainly expressed," not in so
many words, it is true, that the first section of the
act of 1856 should not apply to it? Let us see. The
act of 1858, as an additional consideration for the
extension, provides that the appellee should establish
a branch at Columbus, Kentucky; that the amount
of its circulation should not be greater than the amount
of its capital stock actually paid in; that it should, in
addition to the fifty cents per share on its capital stock,
pay annually fifty cents upon each one hundred dol-
lars of its contingent fund; that it should be subject
to all the limitations, conditions and duties imposed
upon it by the act of incorporation; that it should
formally accept the terms of extension. In addition to
this, the act of the first of March, 1872, authorized the
appellee to purchase the stock that the State held in its
bank; upon which it was to pay annually fifty cents on
each one hundred dollars, which was to "be in full of
all tax or bonus" on such increased stock; also, her
charter was "extended twenty-five years;" that the
appellee, in addition to its former obligation, agreed
to pay annually fifty cents on each one hundred dollars
of its contingent fund and increased capital stock, for
the period of twenty-five years; that it was to be exempt
from all other taxation thereon during that period;
that it was to establish another branch at Columbus,
Kentucky; that it was to restrict its circulation; that

its business involved a large capital, the profits of which were limited to six per cent. interest; that well-defined and permanent rules were essential to its successful management; that changes in its chartered privileges might hazard its success and safety, and render uncertain and precarious a business, whose success depended upon a steady adherence on the part of the State to its plighted faith. These considerations induce the belief that the acts of 1858 and 1872 were intended to continue in force an irrevocable contract.

FRANKLIN COUNTY COURT v. FARMERS' BANK.

The appellee was chartered in 1850, which was to continue in force until the ——— day of ———, 1880. By the fifteenth section of said charter the appellee was required to pay annually into the State Treasury fifty cents on each one hundred dollars of its capital stock, "which," according to said section, "shall be in full of all tax or bonus." By an act of the Legislature, approved March the 10th, 1876, the appellee's charter was extended for the period of twenty-five years from and after the expiration of the time fixed in said charter.

The principles announced in the Bank of Kentucky case, *supra*, apply to this case.

FRANKLIN COUNTY COURT v. DEPOSIT BANK OF FRANK-FORT.

The appellee was chartered March 3, 1863, to continue twenty years. There was no specific tax agreed on in the charter. But, by the general law then in force, the appellee was required to pay annually into

the State Treasury fifty cents on each one hundred dollars of its stock.

It may be conceded that, as the appellee and the State, by the terms of the charter, made no contract in reference to taxation, the State would have the power to subject the appellee to the payment of such taxes as are imposed upon persons generally, and that the appellant would have the right to tax the appellee under the law of 1876.    But the Legislature, by an act approved March the 18th, 1871, declared: "That the tax or bonus now paid by said bank, in future shall be in full of all taxation; but this shall not be construed to apply to city tax upon real estate owned by it."    By an act approved February the 23d, 1882, the appellee's charter, together with the foregoing amendment, was extended and continued in force for twenty years from the third of March, 1883.

The language of the amendment of 1871, "in full of all taxation," not only exempts the appellee from the payment of any other tax, whether county or State, but its meaning is made doubly clear by the succeeding clause that excepts from the exemption city taxes on its real estate.    Also, if the act of 1876, in the light of the act of 1856, should ordinarily be construed as repealing the exemption from taxation so far as the appellant is concerned, the act of 1882 puts that matter at rest; for, by said act, the act of 1871 is expressly continued in force, thereby showing that it was the intention of the Legislature that the act of 1876 should not apply to the appellee.

THE CITY OF FRANKFORT v. THE FARMERS' BANK AND BANK OF KENTUCKY.

From what has been said in the case of the Franklin County Court v. The Bank of Kentucky, it fol-

lows that the appellant, The City of Frankfort, had no authority to tax the real estate belonging to either of the appellees.

The judgment of the lower court in each case is affirmed.