## Commonwealth v. Southern Pacific Company.

(Decided March 22, 1916.)

### Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

1. Taxation—Interest on Taxes—Penalties.—As interest on taxes cannot be collected without express statutory authority it partakes of the nature of a penalty, and therefore the interest provided for in section 4148, Kentucky Statutes, on taxes not paid on or before the first of December each year, can be collected only if the penalty thereon provided for may be also collected. ·

2. Taxation—Penalties.—The penalty provided for in section 4148 cannot be exacted from the taxpayer by the Commonwealth until he has had an opportunity to voluntarily pay his taxes before the penalty attached; if the taxpayer exercises his statutory right to appeal from the action of the board of supervisors, and the appeal so taken is not acted upon by the quarterly court until after the first of December following, without fault upon the part of the taxpayer, the penalty provided for in the statute is not collectible.

3. Taxation—Suits to Assess Property—Appeal and Error.—Where the Commonwealth is the moving party in seeking to have certain property assessed for taxation and the taxpayer appeals to the quarterly court from the action of the board, the duty rests upon the Commonwealth and not the taxpayer to take such steps in the quarterly court as will facilitate the collection of the taxes on the conceded valuation, if that court had the power to make any such orders.

4.   Taxation—Suits to Assess Property—Appeal to Quarterly Court.—
     The quarterly court on such appeal is a state agency acting in a
     ministerial capacity under our revenue and taxation laws; it has
     no power to enter any judgment for taxes and has no authority
     to put the taxpayer on any sort of terms before it will hear his
     appeal; its only power under the statute is to determine whether
     the property is or is not assessable, and, if it is, to fix its assess-
     able value.
5.   Taxation—Suits to Assess Property—Appeal to Quarterly Court.—
     While our statutes contemplate that an appeal by a taxpayer to
     the quarterly court from the action of the board will be dis-
     posed of in time for the taxpayer to pay his taxes before the
     penalties attach, there is no provision fixing the time within
     which the quarterly court shall dispose of such appeal; and if it
     fails to make a final assessment before the penalty attaches the
     taxpayer would be deprived of the opportunity to pay his taxes
     in time to escape the penalty and should not be penalized be-
     cause of the court's failure to act; and should not be expected
     to make a tender of an amount which has not been ascertained
     and which necessarily is indefinite and uncertain.
6.   Taxation—Suit to Assess Property—Appeal to Quarterly Court.—
     Pending such an appeal to the quarterly court by a taxpayer the
     sheriff has in his hands no tax bill which would authorize him to
     receive the amount if tendered; and if he had received any such
     amount the sureties on his bond would not be liable therefor.
7.   Taxation—Assessment—Payment.—If the taxpayer had paid the
     full amount of the taxes on the excessive preliminary assessment
     made by the board, it would have been a voluntary payment and
     the excess could not have been recovered back.

M. J. HOLT and A. SCOTT BULLITT for appellant.

J. P. HOBSON & SON, HUMPHREY, MIDDLETON & HUMPH-
REY for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Affirming.

This is an action by a revenue agent against the ap-
pellee company to recover interest and penalties on
taxes already paid, but not paid on or before the 1st of
December of the years in which they were due, as al-
leged.

The action is based upon section 4148, Kentucky
Statutes, which is as follows:

"All State, county and district taxes, except as
otherwise specially provided, shall be due and payable
on and after the first day of March, after the assessment,
and all taxpayers whose taxes are not paid on the first
day of December after the same are due shall be deemed
delinquent, and such taxes shall bear interest at the rate

of six per cent per annum from the first day of December after they are due until paid; and any person or persons failing to pay their taxes by the first day of December in the year following the assessment for such taxes, shall pay a penalty of six per centum additional on the taxes due and unpaid.''

The defense in substance is that the company had no opportunity to voluntarily pay the taxes on or before the first of December in each of the years involved, for the reason that the County Board of Supervisors in each of the years named, arbitrarily and without right, assessed property which was not assessable and placed an exorbitant and unreasonable valuation upon the property which was assessable; and that by reason of these facts the company appealed from the action of the said Board of Supervisors to the Quarterly Court, as it was expressly authorized to do by the provisions of section 4128 of the Kentucky Statutes; that as a result of said appeal the assessment when finally made was, for the whole five years involved, reduced approximately forty per cent below the assessment so made by the Board of Supervisors, and that even this assessment was not made by the said Quarterly Court until after the first of December in the last year the taxes for which were involved, although the company in each of the years promptly appealed from the action of the Board of Supervisors within the time prescribed by the statute.

The Southern Pacific Company is a Kentucky Railroad Corporation, although it does not own or operate any railroad in this State, nor in fact own any property therein other than some office furniture or fixtures of nominal value. It does own and operate, however, a line of steamships, together with some pilot boats and barges used exclusively in the harbors of New York, New Orleans and Galveston. It is out of the assessment of this floating equipment of the company for taxation in this State that this litigation has grown.

The Board of Supervisors assessed the appellee company on its floating equipment as follows:

"For the year 1909 ................................................$10,000,000
For the year 1910 ................................................ 12,000,000
For the year 1911 ................................................ 15,000,000
For the year 1912 ................................................ 15,000,000
For the year 1913 ................................................ 15,000,000
                                                    ―――――――――
                                                    $67,000,000''

Promptly after each such assessment by the board appellee appealed from such action to the Quarterly Court, and that court in December, 1913, acted upon each, of said five appeals at the same time, and assessed the property mentioned as follows:

"1909 ..................................................................$ 7,460,251.91
1910 ..................................................................  7,135,667.38
1911 ..................................................................  7,363,426.79
1912 ..................................................................  8,700,714.62
1913 ..................................................................  8,307,411.84

$38,967,472.54"

It will be seen that the aggregate assessment by the board for the five years involved was by the judgment of the Quarterly Court reduced more than $28,000,000.

Within a few days after such final assessment by the Quarterly Court the company paid five years taxes aggregating $306,111.28, but there was not embraced therein any interest or penalty as provided in the statute quoted.

Section 4128, Kentucky Statutes, provides:

"But any taxpayer feeling himself aggrieved by the action of said board of supervisors, may appeal to the quarterly court within thirty days after the final adjournment of said board, by filing with the judge of said court a certified copy, under the hand of the clerk of said board, of the action of said board."

Promptly in each of the years from 1909 to 1913 upon the assessment by the Board of Supervisors the company appealed to the Quarterly Court under the provisions of this statute.

The Quarterly Court holds monthly sessions, and although each of these appeals when perfected was promptly docketed in that court, its records, so far as they are produced here, fail to show that either the Commonwealth or the company took any aggressive action to bring any of these appeals to a conclusion until after the February term, 1913, of the Quarterly Court, that being about the time the last appeal was taken.

On the contrary the orders of the Quarterly Court show that in each instance after these appeals were docketed therein, they were set at rules for one and sometimes two of the monthly terms, and an order was entered directing that they be not further set until

ordered. For instance at the May term, 1909, of the Quarterly Court, which was the second term it had been docketed therein, the 1909 appeal was remanded and directed not to be set until ordered, and no further order was made therein until the February term, 1913, when it was remanded to the March rules. After the first four appeals had been perfected and on the 22nd of July, 1912, an agreed order was entered on each of said four appeals, signed by the county attorney, directing that they be remanded and not set until ordered, and no order was thereafter made in any of them until the February term, 1913, and this order of July, 1912, was entered more than eight months after the Supreme Court of the United States had decided that the ocean-going craft was taxable in this State.

The record utterly fails to show any effort by either party to have any one of these appeals prosecuted to a final determination until after the February term, 1913, of the Quarterly Court. The only explanation of this found in the record is that prior to the first of September, 1908, there was pending in the Jefferson County Court a proceeding to assess the defendant with its ocean-going steamships, and in that proceeding such steamships were assessed for taxation in Jefferson County; that there was an appeal from that order of assessment to the Jefferson Chancery Court wherein it was held that none of the said steamships or floating equipment of the company were assessable in this State. An appeal was prosecuted by the Commonwealth from the judgment of the Jefferson Chancery Court so entered, and this Court on the 19th of June, 1909, reversed the judgment of the Jefferson Chancery Court, and held that the taxable situs of the ships engaged in the coastwise trade owned by appellant was in Jefferson County. Thereafter in March, 1910, the mandate of this court was so modified as not to embrace the floating equipment of the company, such as pilots and barges, used exclusively in its harbor operations.

Upon a writ of error from the Supreme Court of the United States the opinion of this court was affirmed in that court, on November 13th, 1911, 222 U. S. 63.

Throughout that litigation it was earnestly contended that no part of the floating equipment of the Southern Pacific Company had a taxable situs in this State, and the pendency during these years of that litigation may,

partially at least, account for the inactivity of the parties upon the appeals prosecuted by the company to the Jefferson Quarterly Court.

It is conceded by counsel for appellant that neither the interest nor penalty on taxes can be collected in the absence of express statutory authority, and that being true, the interest imposed by the statute quoted partakes of the nature of a penalty and therefore if the penalty cannot be collected neither can the interest.

Two questions are presented for decision, First: May the interest and penalties provided by the statute for failure to pay taxes on or before the first of December be exacted from the taxpayer where he exercises his statutory right to appeal from the action of the Board of Supervisors in assessing his property if his appeal so taken is not acted upon by the Quarterly Court until after the first of December following, the time which the statute fixes for the interest and penalty to attach? Second: Is it incumbent upon a taxpayer taking such an appeal to tender any taxes, the amount of which has not been ascertained?

The first proposition resolves itself into the question whether the taxpayer is delinquent until he has had an opportunity to voluntarily pay his taxes and which have previously been definitely fixed or the amount of which could have been by him approximately ascertained before the penalty attaches.

In this case, as we have seen, the Board of Supervisors assessed the property for each year many million dollars in excess of its true valuation as finally ascertained, and as long as the appeals were pending in the Quarterly Court it was impossible for the company to know what the final amount of the assessment might be, and it would have been nothing short of a reckless guess for it to have undertaken to approximately fix the amount of its taxes for any one of the years involved, so as to have tendered the same before the interest and penalty attached.

We have been referred to no authority, nor have we found any, bearing directly upon the question involved here, although there are a number of decisions in this State bearing upon the general question of when interest and penalty on taxes will be enforced and when they will not be. The case of Gosnell v. City of Louisville, 104 Ky., 201, was a street apportionment warrant case

wherein the defense was that the warrant was based upon erroneous assessment; a reassessment was had which materially reduced the amount of the warrant and the circuit court gave judgment for such reduced amount but allowed interest thereon from the day of the original warrant. This court in holding that to be erroneous, said:

"The apportionment, as we have held, was erroneous; and until corrected by the courts or the council it was impossible for the property-holder to ascertain for what amount he was liable. It is manifest, therefore, that it was inequitable to charge the property-holder with interest until there was an ascertained liability against him or his property, by the payment of which the lien could be discharged. In Conner v. Clark, 15 Ky. Law Rep. 126, it was held that parties ought not to be held liable for interest until the amount they owe is ascertained with certainty; and in that case, as the amount which the appellants should pay was not ascertained until the judgment rendered, it was error to refuse to adjudge interest against them. * * * In this view we concur. Neither interest nor costs should have been allowed against the property-holder, except from the time the amount he was required to pay was so fixed that he could discharge it."

The rule laid down in that case has since been followed and approved in two other street assessment cases, to-wit: Jackson's Admr. v. McHarque, 118 S. W. 944, and City of Louisville v. Selvage, 26 K. L. R. 479.

In the case of United States Trust Company v. New Mexico, 133 U. S. 535, involving the claims of a territory for taxes against a railroad. The lower court found the assessment of taxes to be incorrect, and corrected it, and gave judgment for the taxes on the assessment as corrected and allowed interest only from the day of the corrected assessment. The Supreme Court of the United States in passing upon the ruling of the lower court as to the allowance of interest only from the day of the corrected assessment said:

"The owners of the road were, therefore, justified in contesting their liability to such assessment and taxation in gross, and until there was an identification of the property subject to taxation, and a determination of the amount of taxes due, it would be inequitable to charge penalties for non-payment. Lake Shore & Mich-

igan Southern Railway Co. v. People, 46 Mich. 193, 211: County of Redwood v. Winona and St. Peter Land Co., 40 Minn. 512, 522.''

And in the same case the court pointed out the distinction between an action brought by a property-holder to restrain the collection of taxes where it would be incumbent upon him to pay or tender the amount conceded to be due, and one in which the authorities were the moving party seeking to collect taxes.

The case of State v. Galveston, &c. Railway Co., 97 S. W. 71 (Tex.), the State was seeking to recover certain taxes due the State and the penalties thereon for non-payment. The trial court reduced the assessment and rendered judgment for the taxes under the reduced assessment, but refused penalties. The Supreme Court of Texas in affirming this judgment said:

''The State was claiming against the railroad com panies more than twice the amount due to it under the law. If the railroad companies had paid the full amount demanded, they could not have recovered back by suit against the State that which was unlawfully collected: the only remedy the corporations had was to await the action of the State, and secure from the courts a proper construction of the law. The Treasurer of the State was not authorized to receive less than the sum assessed by the Comptroller; hence the railroads could not pay the sum actually due, and a tender of what the Treasurer could not accept would have been useless. The State. being in the wrong, cannot recover penalties which depended upon a failure of the corporations to perform a duty enjoined by law.''

In the State v. Certain Lands in Redwood County, 42 N. W. 473 (Minn.), certain lands had been omitted from taxation and steps were taken to assess the same. After the assessment the State brought the action to collect the taxes and recover penalties and interest. The assessment was shown to be excessive and was reduced, and the court declined to allow either interest or penalty, and the Supreme Court of that state in approving that action said:

''A penalty for the non-payment of a tax cannot be imposed until the person has an opportunity to pay it, and fails to do so. What we have heretofore said regarding 'interest' is equally applicable to penalties. Now, as the whole tax extended against a tract of land

is an entirety, the owner cannot pay a part of it without paying the whole, and if a part of it is illegal, and he pays the whole, ordinarily it would be a voluntary payment, and he could not recover back the illegal part. Hence in such case his only remedy is to wait until proceedings are commenced to enforce judgment against his land, and then defend against the illegal part of the tax; and until it is deducted by the judgment of the court he has had no opportunity to pay the valid part of the tax, and consequently has been guilty of no default. Therefore, whether it be a case of a 'current' tax or an 'omitted' tax, if the party succeeds in his defense as to part of it as illegal, all the penalties on the whole tax previously imposed for its non-payment were unauthorized, and cannot be included in the judgment. This is precisely the present case. That part of the tax assessed and extended against the lands in 1886 as 'back interest' was, as we have already decided, unauthorized and illegal. To that extent appellant had a valid defense to the tax, which it had a right to interpose, and in which it was entitled to succeed. Until the correct amount of the taxes had been determined by excluding this illegal addition, it had not been in default, and no penalties could be legally imposed.''

There is another class of cases, however, in this State wherein it had been held that where the assessment was originally made on the wrong basis or because of erroneous calculations, although the correct amount was susceptible of exact ascertainment under the original assessment, that interest will be allowed from the day of the original assessment notwithstanding the corrected assessment.

Such are the cases of Owensboro Water Works Co. v. Owensboro, 74 S. W. 685, and an extended opinion, 75 S. W. 628; City of Louisville v. Louisville Ry. Co., 118 Ky. 534.

In the latter case the court in distinguishing that class of cases from the line of cases we have been referring to said:

''His ruling appears to be based on the line of authorities holding in cases of liens for street improvements that no interest runs against the taxpayer until a correct apportionment is made. These cases are not in point, for there the taxpayer cannot know what he is to pay until the cost of the improvement is apportioned

to the property liable therefor. But here the taxpayer could have learned exactly what his taxes were from the records made by the Board of Valuation and Assessment.''

The distinction therein pointed out seems to apply with equal force to this case; here the taxpayer did not know what he had to pay until the final assessment was made by the Quarterly Court.

The statute provides the board in counties having cities of the first class shall meet the first Monday in January and remain in session not exceeding twenty days at its first session and not exceeding ten days at a second session, so that in the ordinary course of things it must finally adjourn not later than the middle of February, and the appeal is required to be taken from the action of the board within thirty days after the final adjournment.

From this it will be seen that the appeal will ordinarily be taken not later than the middle of March, or eight and one-half months before the penalties and taxes fixed by the statute quoted became effective.

It is apparent from this that the law-makers contemplated that there would be plenty of time in any ordinary case for the Quarterly Court to act before the penalties and interest became effective, and yet no time was prescribed within which the court must act on the appeal. If under these conditions the agency selected by the state to finally assess the property fails to assess it before the time fixed for the interest and penalties to attach, will this failure be allowed to operate so as to penalize the taxpayer?

So far as this record shows the appellee is not responsible for this delay; it only exercised a right expressly granted by the statute. The Commonwealth was the moving party, and it would seem to be its duty to urge such proceedings to a speedy determination, and if it fails to do so before the interest and penalties attach it would be inequitable and unjust to enforce their collection.

At any rate, the State agency charged with the duty of finally assessing this property on the appeal failed to discharge that duty, for some reason not entirely apparent from this record, before the time fixed for the interest and penalties to attach, and that failure should not be permitted to operate so as to penalize a taxpayer

for not paying his taxes before his property has been finally assessed and before he could possibly know their amount. To do so would be to penalize a taxpayer for exercising the right of appeal which the statute expressly gives him.

Clearly it could not have been the legislative purpose to exact from a taxpayer a penalty for failure to pay his taxes when the agency selected by the State for that purpose has not assessed his property in time for him to have voluntarily paid the tax in time to escape the penalty.

To so interpret the statute would be to convict the General Assembly of a deliberate purpose to do a palpable wrong to the taxpayers, and this we do not believe and are not authorized to infer.

It follows from what we have said that the statute could not have intended that the interest and penalties should be exacted when the taxpayer has had no opportunity to voluntarily pay his taxes before they ordinarily attach under its terms.

Before the Board of Supervisors the company filed each year a statement giving what it conceived to be the assessable value of the floating equipment to the company, but contending all along that the taxable situs was not in Jefferson County, and it is now strenuously insisted that after taking the various appeals to the Quarterly Court it was obligatory upon the part of the company to at least tender the taxes pending the appeals to the Quarterly Court on the conceded valuation of the property.

It is argued that it was the duty of the company to have asked the Quarterly Court to have entered some sort of an order permitting it to pay the taxes on the conceded valuation, but this argument is based upon two erroneous ideas: (1) Even if it was within the power of the Quarterly Court to have entered any such order at the instance of either party, the argument ignores the fact that the Commonwealth and not the company was the moving party in this proceeding, and that the Commonwealth and not the company was seeking to have this property assessed, and if any such duty rested upon either party certainly it was upon the Commonwealth to take such steps as would facilitate the prompt collection upon the conceded valuation. It is true the company had prosecuted the appeals to the Quarterly Court,

but that did not change the relations of the parties in the proceeding; the Commonwealth was still the moving party, the party seeking the relief.

This argument seems to assume further that the Quarterly Court occupied the position of a chancellor who was being applied to by a taxpayer to issue an injunction preventing the collection of excessive taxes. Undoubtedly it is not only within the power of a chancellor, but it is his duty when being so applied to to put the applicant upon such terms as will not delay the prompt collection of taxes which he concedes to be due; but the Quarterly Court occupied a very different attitude, it was only a State agency acting in a ministerial capacity in the assessment of property under our assessment and taxation statute. It had no power to enter any judgment for taxes; it had no authority to put the company upon any sort of terms before it would hear its appeal; its sole function is, under the statute, to determine whether the property is or not assessable, and, if so, what is its assessable value.

The statute requires no tender and puts no condition, whatever, upon the right of appeal; and while it is apparent that it was contemplated by the statute that an appeal would under ordinary circumstances be disposed of in time for the taxpayer to pay his taxes without incurring the interest and penalties, yet there is no provision fixing the time within which the Quarterly Court shall dispose of such an appeal; and if that agency so selected by the State fails to dispose of such an appeal and make the final assessment so that the taxpayer would have an opportunity to escape such penalty and interest, manifestly the taxpayer should not be penalized because of such failure, and should not be expected to make a tender of an amount which has not been ascertained and which necessarily is indefinite and uncertain.

The suggestion that the taxes on the conceded valuation might have been tendered to the sheriff is untenable; the assessment was not final and the sheriff could have had in his hands no tax bill which would have authorized him to receive the amount tendered, and if he had received any such amount the sureties on his official bond would not have been liable therefor, for the good and sufficient reason that he would have been receiving money for taxes on property which had never been assessed.

And if the company had paid the full amount of the taxes upon the preliminary assessment made by the board it would have been a voluntary payment and the excess could not have been recovered back of it. Bosworth, Auditor v. Metropolitan Life Ins. Co., 162 Ky. 344.

It is apparent from the whole record that the delay in the Quarterly Court was either because of the failure of the Commonwealth to push to a speedy determination a proceeding which it had instituted to assess this property or because of the mutual acquiescence in such delay by all parties.

Judgment affirmed.