### Bingham's Administrator v Commonwealth.

(Decided May 11, 1923.)

## Appeal from Jefferson Circuit Court.

1. Taxation—Legislature Can Fix Situs of Intangible Property Beneficially Owned Within the State which is not Taxed Elsewhere.—The Legislature can, without violating Constitutional U. S. Amendment 14, fix the situs for taxation within the state of intangible property beneficially owned by a resident of the state, though managed and controlled by a trustee out of the state, where the property was not taxed in the other state, regardless of whether the control was intrusted to the nonresident

by the present owner, or by a previous owner from whom the beneficial title was obtained.

2. Courts—United States Supreme Court Decision is Final on Violation of Federal Constitution by State Law.—The decision of the United States Supreme Court that Kentucky Statutes, section 4020, as amended by Acts 1908, chapter 47, section 1, fixing the situs for taxation of property beneficially owned by residents, did not violate Constitution U. S., Amendment 14, in so far as it declared that intangible personalty was taxable within the state, though it was also taxable elsewhere, is controlling, notwithstanding a prior decision of the state court that the state statute violated that provision.

3. Taxation—Statute Taxing Intangibles of Resident Owner Which are Also Taxed in State Where Located, is Valid.—Neither Kentucky Statutes, section 4020, as amended by Acts 1908, chapter 47, section 1, declaring the intangible property of a resident owner taxable within the state, nor section 4023, which, as construed in connection with the prior section, requires the situs to remain in the state during the period reasonably required for administration of the estate of the resident owner, is unconstitutional.

4. Taxation—Court Can Assess Omitted Property at Value Greater than Stated in Revenue Agent's Statement. —Under Kentucky Statutes, sections 4241, 4260, authorizing court proceedings for the assessment of omitted property, and requiring the revenue agent's statement to state the value of the properties to be assessed, and the court thereafter to fix the value at the fair cash value, which conforms to the provision of Constitution, section 172, as to the valuation for assessment, the requirement of the statement of the value by the revenue agent was to govern the court in rendering a judgment by default, and, if the owner appears and contests the proceeding, the court may fix the value of the property at a value greater than stated in the statement.

5. Taxation—Interest Does Not Run on Unpaid Taxes Unless Authorized by Statute.—The general rule is that, at common law, interest does not run on unpaid taxes, but runs only when authorized by statute.

6. Taxation—Permitting Delay in Payment Without Charging Interest is Discriminatory.—To permit certain taxpayers to withhold and use without interest the money which should have been paid as taxes would be a discrimination against those who pay promptly.

7. Taxation—After Timely Assessment Interest is Allowed in All Cases From Institution of Suit.—Where there has been a timely assessment of property, 6 per cent. interest should be allowed in an action by the commonwealth to recover the amount of the unpaid tax in any event from the filing of the suit.

8. Taxation—Date From Which Interest Runs Where Assessment Delayed Depends on Court's Discretion.—Where property was not assessed at the proper time, the date from which interest should

run upon its subsequent assessment lies in the discretion of the court, dependent upon the attitude of the property owner, and, if the latter actively delays the assessment as by injunction, he should be charged with interest from the time it otherwise would have been made, if he defensively delays it, or, if the Commonwealth delays the assessment, he should be charged with interest only from the time of the assessment.

9.   Taxation—Taxpayer Held Chargeable with Interest Only From Date of Judgment.—Where an administrator who was appointed after the assessor closed his books filed with the tax supervisors an itemized list of the valuations of the property, which the board declined to assess, it was proper in a subsequent proceeding by the state revenue agent under Kentucky Statutes, section 4241, for the assessment of the properties and the recovery of the tax, and a heavy penalty for failure to list it, to permit recovery of interest only from the date of the judgment in that suit, since the allowance of interest is in the last analysis a penalty upon the property owner, notwithstanding the provision of section 4148, as amended by Acts 1908, chapter 35, section 1, imposing interest and penalty separately on delinquent taxes.

10.  Taxation—Money Previously Held in Another State for Investment Under Power of Attorney Held Taxable Against Administrator.—Where an owner of money resident within the state, who had intrusted it to an agent in another state for investment under power of attorney, died before the assessment date as result of which the power of attorney was revoked and the right to the money vested in the executors, the money was taxable within the state.

BRUCE & BULLITT and GROVER G. SALES for appellant.

CHAS. I. DAWSON, Attorney General, J. MATT CHILTON and B. F. WASHER and M. M. LOGAN for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming on the original appeal, and affirming in part and reversing in part on the cross-appeal.

Upon a former appeal of this case, reported in 188 Ky. 616, 223 S. W. 999, it was held that property owned by Mrs. Bingham at her death was assessable in this action instituted by a revenue agent, as of September 1, 1917, and liable for 1918 *ad valorem* taxes in this state, although she died prior to and her administrator was not appointed until after September 1, and the cause was remanded in order that it might be assessed, as had not then been attempted, according to law.

Upon return of the case to the circuit court it was heard by agreement with another case between the same parties involving the amount of inheritance tax due the state on the same property, and upon the same evidence.

The values as fixed by the judgment in this case are the same as by the judgment in the inheritance tax case, which upon the question of values was affirmed on the appeals by both parties in an opinion reported in 196 Ky. 318, 244 S. W. 781. We need not, therefore, restate our reasons here for affirming the judgment in this case upon both the original and the cross appeals as to the values fixed upon the properties involved; neither need we restate here in detail the properties constituting what are known in both records as the "Bingham property" and the "Flagler trust," as both are sufficiently described in the latter opinion, where we held that Mrs. Bingham was the sole owner of the trust properties, and the trustees were mere custodians for compensation to manage same for her benefit.

The questions involved upon the original appeal in this case by the administrator, in addition to those of values, are: (1) Whether or not that portion of Mrs. Bingham's estate known as the "Flagler trust" had a taxable situs within the state, and (2) whether or not any of the property owned by Mrs. Bingham could be assessed by the court at a value in excess of that named by the revenue agent in the statement he filed as a basis for the action.

1. In support of the contention that none of the Flagler trust property owned by Mrs. Bingham had a taxable situs within the state, reliance is had upon the cases from this court of Higgins v. Commonwealth, 126 Ky. 211, 103 S. W. 306; Commonwealth v. West India Oil Refining Co., 138 Ky. 828, 129 S. W. 301; Commonwealth v. Avery & Sons, 163 Ky. 828, 174 S. W. 518; and Hillman Land Co. v. Commonwealth, 148 Ky. 331, 146 S. W. 776.

The question involved in the Higgins case was, as is therein stated, "Is intangible personal property, such as notes, mortgages, and bonds, held by and in the possession of a trustee in this state, who manages and controls it, liable for taxation for state, city and county purposes, at the residence of the trustee, when *cestui que trust* is a non-resident of the state?" In the course of the opinion, answering this question in the affirmative, we said:

"There is, of course, a marked distinction between what is known as corporal personal property, such as live stock, lumber or other material, and intangible personal property like notes, bonds and other securities. And it is

generally recognized that tangible personal property has an actual situs at the place where it is located without respect to the domicile of the owner, whereas the situs of intangible personal property for purposes of taxation depends altogether upon legislative enactment or judicial construction. It does not always follow the beneficial owner, but may be taxed at the place where the person resides who has the control and management of the securities, who lends out the money, collects the interest and exercises other acts of ownership and control over it, and where it may be said to be permanently located, as much so as if the actual owner resided where it was.

"For many purposes the domicile of the owner is deemed the situs of his personal property, but this is only a fiction for motives of convenience, and is not of universal application but yields to the actual situs of the property when justice requires that it should, and is not allowed to be a controlling feature in matters of taxation."

The facts of that case, as in the Hillman Land Company case, are just the reverse of those now under consideration. There a local agent or trustee of a nonresident owner was loaning, managing, and investing funds for the latter in this state. Here nonresident trustees were loaning, managing, and investing funds of a resident owner in the state of the trustees' residence. In holding that cash, notes and bonds while so held by a local trustee for the benefit of the nonresident owner had a taxable situs here, we acted in the Higgins case upon the theory that intangible property did not necessarily have its taxable situs at the owner's domicile, but was a matter of legislative control, and that under our statutes then in effect, attached rather to the managing agent or fiduciary at his residence, provided such control was of a permanent rather than a transitory or temporary character.

Manifestly, then, if we were right in the Higgins case and our statutes were still the same, the Flagler trust property, at least in so far as it consisted of cash, notes and bonds, had a taxable situs in Florida, where the managing trustees resided and employed the funds, since their control was of a permanent rather than a temporary character, being for ten years under Flagler's will, and extended for a further period of twenty-five years by Mrs. Bingham's will; but in that case the question was

not presented or discussed as to whether or not such in-tangible property could be taxed both here and at the residence in another state of the beneficial owner.

That case was decided in April, 1907, and in March, 1908, at the next succeeding session of the legislature, section 4020, upon the construction of which that decision was rested, was amended by adding thereto the following:

"Provided, however, that tangible personal property located and having a taxable situs without the state, of persons residing in this state, and of all corporations organized under the laws of this state, shall not be subject to taxation; and, provided further, that the situs of intangible personal property for purposes of taxation shall be at the residence of the real or beneficial owner, and not at the residence of the fiduciary or agent having the custody or possession of same. Provided further, that nothing herein contained shall in any way affect the liability for franchise taxes now payable by corporations organized under the laws of this state."

It is manifest that in so doing at its next session, the legislature was exercising its authority as declared in the Higgins case, and thereby fixed the situs of *intangible* personalty for the purposes of taxation by this state at the residence of the owner and not at the residence of the agent or fiduciary as decided in that case. Hence if the legislature had the power to fix the situs of such property as expressly held in the Higgins case, the Flagler trust property, under the doctrine of that case and the statute as amended, is here rather than in Florida, and that case instead of sustaining the contention of counsel for the estate, destroys it. But they argue, although relying upon that case, that the taxable situs of intangible personalty is not a question of legislative control, as was held not only in the Higgins opinion but in many others from this court such as Commonwealth v. Northwestern Mutual Life Ins. Co., 32 Ky. L. R. 796, 107 S. W. 233; Johnson, Sheriff v. Bradley-Watkins Tie Co., 120 Ky. 136, 85 S. W. 726; Commonwealth v. Camden, 142 Ky. 365, 134 S. W. 914; and City of Henderson v. Barret's Exor., 152 Ky. 648, 153 S. W. 992.

This argument is based upon the ground that the legislature cannot declare property here for taxation purposes when in fact it is located elsewhere, and that such an attempt is violative of the due process of law guaranty of the federal constitution. The premises conceded the conclusions are indubitably correct, as was held in Louis-

ville & Jeffersonville Ferry Co. v. Ky., 188 U. S. 385. But counsel assume the question at issue, which is whether or not the situs of intangible personalty owned by Mrs. Bingham, a resident of the state, but controlled by her nonresident trustees, is at the residence of the latter, when our legislature had declared it here, and when, too, it is not claimed that the laws of Florida provide other- wise.

There is therefore no question presented involving a conflict of legislative authority, and we might assume that the common law, which does not differ materially from our statute on the question, prevails in Florida, from which it would result that no question of double taxation is presented, and that the sole question for decision on this branch of the case is whether or not, under such cir- cumstances, the legislature of this state can fix the situs of all intangible property beneficially owned by a resident of the state, despite the fact its management and the pos- session of the evidence of same have been entrusted to a nonresident agent or fiduciary for employment in a busi- ness conducted wholly outside the state.

That it has such power at least under such state of case, seems clear; and in our judgment it is wholly imma- terial in any event whether the management and control were entrusted to nonresident agent by the present owner or by a previous owner from whom the beneficial title thereto was obtained.

But this court, after the amendment in 1908 of section 4020, *supra,* held in the case of the West India Refining Co, *supra,* that this section was violative of the due pro- cess of law provisions of the federal constitution in so far as it declared, as it plainly does, that intangible per- sonalty such as cash and notes of a resident owner was taxable here when same had been produced by and was being permanently employed in a business conducted for· the owner by his agents outside of the state, without re- ference to whether or not it was taxed where thus em- ployed.

This ruling was expressly approved and followed in the Avery & Sons case. It is manifest therefore, that if these two cases correctly decided the federal constitu- tional question involved there and here, at least the cash and notes held by the Flagler trustees were not taxable here, regardless of whether or not they were taxed in Florida.

Unquestionably the decisions of the Supreme Court of the United States are the final authority on this question, and that court, as we understand its opinion in Fidelity & Columbia Trust Co. Exor., etc. of L. P. Ewald v. City of Louisville, 245 U. S. 54, 62 L. Ed. 145, L. R. A. 1918C 124, held that such was not the case. That case was appealed from this court, and affirmed its judgment holding that cash belonging to Ewald, a resident of this state, on deposit in a St. Louis bank and never here, and which was produced by a business conducted there by his agents, was taxable here. In its opinion the Supreme Court conceded for the purposes of its decision that the cash also was taxable in Missouri, and held that Ewald was nevertheless taxable here for its value as a tax upon his person for the general advantages of living within this jurisdiction. And it is there stated, upon cases cited, that "liability to taxation in one state does not necessarily exclude liability in another."

The character of tax there and here involved is the same, and while the facts are somewhat different, the legal question is identical, since it was conceded there, as we may concede here for the purposes of this part of the argument, that the intangible property involved was so employed and held outside of the state as to be taxable there.

In the West India Refining Co.'s case, a bare majority of this court agreed to so much of the opinion as applied to intangibles the same rule of fixing their taxable situs by their actual location rather than at the domicile of the owner, as was applied to tangibles by the Supreme Court in Union Refrigerator Co. v. Kentucky, 199 U. S. 194, 50 L. Ed. 150, and like cases.

In the Ewald case, *supra,* the Supreme Court, in disposing of the contention that the doctrine of the last named case should be applied to intangibles, said: "But this court has not attempted to press the principle so far, and there is opposed to it the long-established practice of considering the debts due to a man in determining his wealth at his domicile for the purposes of this sort of tax."

In support of this statement many cases are cited and attention is called to the fact that as much was conceded in the Union Refrigerator Co.'s case. Besides, that case closes with a reference to prior Kentucky cases, presumably the same cases now relied upon by counsel for

the administrator, indicating the opinion that this court had departed therefrom in its decision in the Ewald case.

It results therefore that the West India Refining Company and the Avery & Sons cases must be overruled in so far as they hold that the *intangibles* of a resident owner are not taxable here, even if taxable in another state in the hands of an agent or fiduciary; and that neither section 4020, *supra,* which declares intangible property of resident owner taxable here, nor section 4023, which as construed in connection therewith (Commonwealth v. Camden, *supra*), provides that its taxable situs shall remain here during the period reasonably required for administration of the estate of such owner, is unconstitutional.

As all of the Flagler trust involved upon this appeal consists of intangible property—cash, notes, bonds and stocks—of which Mrs. Bingham was the sole beneficial owner, and the trustees but custodians for compensation to manage same for her benefit, as was decided in inheritance tax case (196 Ky. 318), it follows that all of this property was assessable here as of September 1, 1917, and liable for 1918 *ad valorem* taxes, under the provisions of sections 4020 and 4023, *supra.*

Hence the chancellor did not err in assessing the notes, bonds and stocks, as contended by the administrator, but did err in holding the cash immune, as is the contention of the Commonwealth on its cross-appeal.

2.   The assessment complained of herein fixes the value of the Bingham estate at $479,511.00, and of the Flagler trust at $6,331,439.37 in excess of the aggregate values fixed thereon by the revenue agent in the statement filed by him in the county court as the basis of this action, and it is the contention of the administrator that this is error, since it allows the plaintiff to recover a tax on these amounts in excess of that for which he sued.

Ordinarily, it is true, of course, a litigant cannot recover judgment in excess of that for which he sued, and this, in a sense, is an action to recover the taxes due upon the assessed value of the properties involved; but its primary purpose was to coerce the assessment of the properties which had not been assessed by the ordinary assessing authorities.

The statutes, sections 4241 and 4260, authorizing this proceeding, require that the statement shall state the value of the properties sought to be assessed, in addition to describing them, and we have held that this provision

of the statute is mandatory. The statute, however, provides just as mandatorily that after the property owner has been notified of the pendency of the action as therein required:

"If it shall appear to the court that the property is liable for taxation and has not been assessed, the court shall enter an order fixing the value thereof at a fair cash value, estimated as required by law."

The evident purpose of the legislature in requiring the revenue agent, seeking to assess omitted property, to describe it and state its value, was twofold: One purpose was to give the property owner definite information as to the property intended to be assessed, and of the value at which it would be assessed if he made no defense to the action; the other purpose was to enable the court, in event no defense was offered, to render a judgment by default, which he could not do, of course, unless in this statement there was both a description of the property and a statement of the value.

It was never intended, however, that the value as fixed by the revenue agent in his statement should be controlling where there was a contest, since it is expressly provided that, if upon a hearing it shall appear the property has not but should have been assessed, the court shall fix the value of the property at a fair cash value estimated as required by law.

Section 172 of the constitution requires that: "All property, not exempted from taxation by this constitution, shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale."

In the light of this constitutional provision, and the evident attempt of the legislature to comply therewith by providing that the court, after a hearing, should assess the property at its fair cash value as provided by law, we are sure there is no merit in this contention of the appellant.

As this disposes of all of the complaints on the direct appeal, it results that the judgment upon that appeal must be affirmed.

Upon the cross-appeal the Commonwealth contends that the court erred (1) in allowing interest only from the date of the judgment herein, January 3, 1922, and that it should have been allowed from May 3, 1918, when the suit was filed, or August 1, 1918, at least; and (2) in holding that $1,047,543.54 on deposit in a New York bank, and

$1,930,938.04 in cash held by the Flagler trustees, had such a situs outside the state as rendered these sums exempt from assessment and taxation here.

3.  Upon the question of interest upon the amount of the tax as finally determined, the circuit judge, in his written opinion upon which the judgment is based, has so accurately analyzed the cases from this court upon the question and so admirably stated the rules deducible therefrom under varying circumstances, that we have decided to adopt it, as we do the conclusion that under the facts of this case, interest runs only from the date of the judgment herein.   It reads:

"The question of interest raised by the Commonwealth's claim to it and the administrator's opposition— the former resting upon L. & N. R. R. Co. v. Commonwealth, 29 Ky. L. R. 668, the latter upon Commonwealth v. Southern Pacific Co., 169 Ky. 296—necessitates consideration of these and kindred cases.

"It is provided in sec. 4148, Kentucky Statutes (1915), in force at the time with which we are here concerned:

" 'All state, county and district taxes, except as otherwise specially provided, shall be due and payable on and after the first day of March after the assessment, and all taxpayers whose taxes are not paid on the first day of December after the same are due shall be deemed delinquent, and such taxes shall bear interest at the rate of six per cent per annum from the first day of December after they are due until paid; and any person or persons failing to pay their taxes by the first day of December in the year following the assessment for such taxes, shall pay a penalty of six per centum additional on the taxes due and unpaid.'

"It is argued in behalf of the Commonwealth that such of the Bingham properties as were taxable in Kentucky were subject to assessment on September 1, 1917, that such taxes as were collectable upon such properties as were assessable on that date were due, under the statute, on March 1, 1918, and that interest should run on such taxes, subsequently ascertained, from that date. Conceding, however, that the collection of revenue is not begun in Jefferson county until August, the Commonwealth asks interest from August 1, 1918, instead of March 1.

"Taxpayers whose property had been regularly assessed as of September 1, 1917, as a basis for the *ad valorem* taxes of 1918, had from March 1, 1918, until

December 1, 1918, to pay the face of their bills without interest or penalties. In no event, therefore, in the present case, could interest be awarded to begin at a date earlier than December 1, 1918. To award interest running from an earlier date would be to violate fundamental principles of equality and uniformity.

"The general rule, subject to an exception to be noted later, is that at common law interest does not run on taxes. As a rule, it runs only when authorized by statute. When it is so authorized, it is in the nature of a penalty imposed for delinquency in nonpayment of the tax. Ormsby, etc. v. Louisville, 79 Ky. 197; L. & N. R. R. Co. v. Hopkins Co., 87 Ky. 605; Kentucky Central R. R. Co. v. Pendleton Co., 8 Ky. L. R. 517; L. & N. R. R. Co. v. Commonwealth, 89 Ky. 531; Wooley v. Louisville, 114 Ky. 556; L. & N. R. R. Co. v. Commonwealth, 29 Ky. L. R. 666; Commonwealth v. Rosenfield Bros., 118 Ky. 374; Louisville, etc., Co. v. Louisville, 146 Ky. 573; Commonwealth v. Southern Pacific Co., 169 Ky. 296; U. S. Trust Co. v. New Mexico, 183 U. S. 535; Gray, Limitation of the Taxing Power, sec. 1215; Cooley, 2 Taxation, 20.

"The Kentucky statute in question here prescribes a double penalty, one by name and the other by way of interest, both running from the same date.

"A citizen cannot be said to be delinquent, and thereby subjected to charges of interest and penalties, until his property has been assessed and a valuation fixed upon which the applicable tax rate may be extended. Until that time, he does not know upon what he is taxable, nor for what he is liable. Until the identification by lawful authority of his taxable property, the determination by lawful authority of the amount of taxes due, and the opportunity given for payment without interest or penalty and the failure to pay, 'it would be inequitable to charge penalties for nonpayment. L. & N. R. R. Co. v. Commonwealth, 29 Ky. L. R. 666; Commonwealth v. Southern Pacific Co., 169 Ky. 296; Redwood County v. Winona & St. P. Land Co., 40 Minn. 512; L. S. & M. S. R. Co. v. People, 46 Mich. 193; State v. Lands in Redwood Co., 43 N. W. 473; State v. Galveston, etc., Ry. Co., 97 S. W. 71; U. S. Trust Co. v. New Mexico, 183 U. S. 535.

"So far, then, as interest authorized by statute is concerned, it is a penalty for delinquency, and cannot be imposed until, after assessment of his property, determination of his tax, and opportunity to pay, the owner fails to pay.

"The courts of this country seem unanimous in the declaration that taxes do not bear interest except by express statutory authority.    State v. New England Furniture & Carpet Co. (Note), 16 Ann. Cas. 470.

"Judge O'Rear touched the reason of the doctrine in Commonwealth v. L. & N. R. R. Co., 31 Ky. L. R. 819, but a fuller statement is given by the Supreme Court of Connecticut in Sargent & Co. v. Tuttle, 67 Conn. 162, 32 L. R. A. 822.

" 'At best, a tax is a burden—a necessary one, it is true, but none the less a burden—imposed on the taxpayer without reference to his consent; and it seems reasonable to hold that any increase of that burden, by way of penalty or otherwise, should be expressly made by the power which imposes it, and that, until the legislative will to increase the burden by the addition of interest has been clearly expressed, interest should not be allowed.'

"As in the case at bar, the properties have never been assessed, the administrator cannot, under the unanimous authority, be held delinquent and subjected to the payment of the statutory interest and penalties.

"But, while in most, if not all other, jurisdictions it seems to be held that the legislative imposition of interest and penalties under certain conditions constituting delinquency indicates the intention that under no other circumstances shall interest be charged, yet in this state interest, aside from the statute, is awarded where the property owner, although not delinquent within the contemplation of the penalizing statute, has delayed payment.

"1.    In Henderson Bridge Co. v. Commonwealth, etc., 120 Ky. 690, the Commonwealth sued to recover taxes due upon the Henderson Bridge Company's franchise as duly assessed by the state board of valuation and assessment for 1893, 1894, 1895 and 1896.    On the question of interest, the court said:

" 'The taxes were collectable by suit.    The defendant's defense being adjudged bad, the taxes sued for, like any other account, should bear interest from the time the suit was brought, otherwise the defendant would be allowed to profit by the law's delay, and a premium would be held out to secure such delay, whereby the state is deprived of the money and the defendant is enabled to retain money it should have paid.'    Louisville v. Louisville Ry. Co., 118 Ky. 534, 27 Ky. L. R. 141.

"2.    In the two opinions in L. & N. R. R. Co. v. Commonwealth, 29 Ky. L. R. 666 & 668, a distinction was

drawn between statutory interest and penalty and interest as such. Before the tentative assessment by the state board of valuation and assessment of the company's franchise of 1902 had become final, the company, paying the amount which it conceded represented the franchise tax, procured in the federal court an injunction against the official steps necessary to complete the assessment. Ultimately unsuccessful in the Federal Supreme Court, the company paid the balance of the tax fund due. The Commonwealth then sued to recover the ten per cent penalty and the ten per cent interest prescribed by the applicable statute, the interest being sought from the date·upon which the tentative assessment would have become final but for the, in the final result, unavailing intervention by the company.

"Judge Paynter, supported by Judges Barker and Settle and Chief Justice Hobson, held in one opinion that, inasmuch as there had been no assessment, the company had not been delinquent within the meaning of the statute, and could not be subjected to the statutory interest or penalty.

"Chief Justice Hobson, in a second opinion, supported by Judges Barker, Settle and Nunn, held that, wholly aside from the statute, the company should pay six per cent interest upon the taxes from the time that the tentative assessment would have become final but for the injunction.

The Chief Justice cited the language already quoted from the Henderson Bridge Co. v. Commonwealth, *supra,* adding: 'We do not see any substantial difference between the case where the defendant causes the delay by a defense which he files to the suit for the taxes, and a delay which he causes by an action brought by him staying the hands of the Commonwealth and preventing it from collecting its taxes. In either case by his own voluntary action the taxpayer has obstructed the collection of the public revenue and has retained in his hands money which he ought to have paid over on his taxes. The allowance of interest in such cases is not upon the ground that taxes bear interest, but upon the ground that the taxpayer has by his voluntary action obstructed the collection of the taxes, and by this means has retained money which he ought to have paid over.'

"3. In Bank of Kentucky v. Commonwealth, 107 S. W. 812 (not officially reported), the Jefferson county court on December 29, 1903, assessed for taxation certain

property of the Bank of Kentucky as omitted from the regular assessment of 1899 and 1900. Upon successive appeals by the bank to the circuit court, the Court of Appeals, and the Supreme Court of the United States, the judgment of the lower court was upheld. Upon the return of the case from the Supreme Court to the Court of Appeals, certain motions by both parties led to the opinion by Judge Hobson, in the court of which L. & N. R. R. Co. v. Commonwealth, 29 Ky. L. R. 668, was referred to. It was said: 'Under the authority of that case, the appellant should pay interest at six per cent interest on the taxes in controversy from the date of their assessment in the county court.'

"4. In Commonwealth v. Southern Pacific Co., 169 Ky. 296, the board of supervisors of Jefferson county in each of the years 1909 to 1913, inclusive, assessed certain floating equipment of the company. Following each assessment, the company appealed to the quarterly court. No action on the appeals was sought, either by the Commonwealth or by the company, until February, 1913, the action being due, apparently, to the fact that the parties tacitly awaited the determination of the issue, the taxability of the floating equipment, involved in their more advanced litigation. In December, 1913, the quarterly court reduced the assessment of the supervisors by about forty per cent; whereupon the company promptly paid the face of the taxes upon the final assessments. The Commonwealth then sued to recover the statutory interest and penalties for delinquency by the company in failing, after assessment, to pay the taxes each year within the time allowed before imposition of the penalty. The court said: 'So far as this record shows, the appellee is not responsible for this delay; it only exercised a right expressly granted by the statute. The Commonwealth was the moving party, and it would seem to be its duty to urge such proceedings to a speedy determination, and if it fails to do so before the interest and penalties attach, it would be inequitable and unjust to enforce their collection. . . . It follows from what we have said that the statute could not have intended that the interest and penalties should be exacted when the taxpayer has had no opportunity to voluntarily pay his taxes before they ordinarily attach under its terms.' In the case at bar, the Commonwealth relies upon L. & N. R. R. Co. v. Commonwealth, *supra,* the second of the four cases digested, as substantiating its claim to interest from the date the

taxes would have been due had the assessment been made on September 1, 1917. In answer it may be said that, under the facts of the present case, that decision is not controlling.

"The administrator relies upon the Southern Pacific case, *supra,* the fourth case digested, as exempting it from interest. In response to this, it is only necessary to say that the Southern Pacific case relates specifically to a statutory interest and penalties, and does not touch the question of interest aside from the statute. The two cases stand as expressions of distinct principles, and neither is, alone, controlling in the case at bar.

"To understand the law as to interest aside from the penalizing statute, as applicable to the present proceeding, it seems necessary to consider together the four decisions digested. From these, the following principles may be fairly drawn:

"1. Taxes, which constitute the public revenue, should be paid promptly by all when due; those who pay promptly would be discriminated against if those who do not, whatever the reason, were permitted to withhold and use without interest the money which should have been paid.

"2. Where there has been a timely assessment of property, in an action by the Commonwealth to recover the amount of the unpaid tax six per cent interest should, at any event, be allowed from the filing of the suit. Henderson Bridge Co. v. Commonwealth.

"3. Where property has not been assessed at the proper time, upon its subsequent assessment six per cent interest should run upon the tax. L. & N. R. R. Co. v. Commonwealth; Bank of Kentucky v. Commonwealth.

"4. In such case, the time from which interest should run lies in the discretion of the court, dependent upon the attitude and conduct of the property owner, whether offensive or merely defensive.

"5. Where the property owner militantly delays the assessment, as by injunction, he should, upon ultimate failure, be charged with interest upon his taxes from the time they would have matured but for his dilatory intervention. L. & N. R. R. Co. v. Commonwealth.

"6. Where the property owner defensively delays the assessment, as by defending the Commonwealth's action or by appeal from adverse judgment, he should, upon ultimate failure of his defense, be charged with in-

terest .from the time the assessment is made. Bank of Kentucky v. Commonwealth.

"7. Where the Commonwealth delays the assessment, the taxpayer should be charged with interest only from the time of the assessment.

"In the case at bar, there has been no assessment of the properties, the regular assessing day for which was September 1, 1917.

"The administrator, the assessor having closed his books under the law before the fiduciary had completed its large task of surveying the properties, filed with the tax supervisors of Jefferson county an itemized list with valuations in ample time for the assessment to have been then regularly made.

"The board declined to make the assessment. Had it made the assessment, the tax rate for 1918 would have been extended thereon, and the taxes would have matured December 1, 1918. Under those circumstances, whatever steps the administrator might have taken to contest the assessment, whether defensive or offensive, interest would have run from the maturity of the tax.

"Upon the failure of the tax supervisors to make an assessment, the Commonwealth, by its revenue agent, filed this proceeding in the county court, under sec. 4241, Kentucky Statutes, for two purposes: (1) To coerce the assessment of the properties as omitted from the regular assessment, and (2) to recover from the revenue agent the twenty per cent penalty for the administrator's alleged delinquency in the alleged omission. The administrator contested the proceeding upon two grounds: (1) That the administrator had done all that it could do under the law, that it was not delinquent as the tax supervisor had deliberately declined to make the assessment, and that the revenue agent had no right to maintain the action; and (2) that the properties were not taxable in Jefferson county. The administrator prevailed in its first defense in the county court. On the Commonwealth's appeal, the administrator prevailed in its first defense to the extent that the revenue agent with his claim for penalties was eliminated and that it was held not to have been delinquent, but it lost in its second defense and the case was retained in the circuit court for the purpose of making the assessment. Both parties took the matter to the Court of Appeals, the result involving a technical variance in procedure but no substantial advantage to either. (189 Ky. 616).

"The allowance of interest is, in the last analysis, by way of penalty upon the property owner for having done that which he ought not to have done. The history of this case has been very unusual. When it is considered that the tax supervisors, with the advice of the state revenue authorities, were responsible for the failure of a timely assessment early in 1918, and thereby forced the administrator into prolonged litigation, which included a justifiable defense against a totally unwarranted charge of delinquency and claim to enormous penalties, it would seem inequitable to charge the administrator with offensive delay and to impose upon it the payment of interest from a date earlier than this, the first assessment of the properties. These conclusions seem to accord with the philosophy of the four opinions hereinbefore digested, and to be justified by that in Bank of Kentucky v. Commonwealth, 107 S. W. 812.''

4. The $1,047,543.54 on deposit with the Guaranty Trust Co. of New York City was to the credit of Mrs. Bingham and Wm. H. Beardsley jointly, prior to and at the time of her death, and under power of attorney was subject to the latter's check, who, as her agent, used it as a fund from which to make investments for her account.

Upon these facts the trial court concluded this money, although belonging to Mrs. Bingham in her own right and not connected with the Flagler trust, was so located in New York and there employed in business by an agent, as to fix its taxable situs there and beyond the taxing power of this state. That the court was in error in so holding is apparent from what we have already said, as well as for the further reason that the power of attorney and Beardsley's agency were terminated by the death of Mrs. Bingham on July 27, 1917, and the title to this money immediately vested in her personal representative, as we held on the former appeal of this case. Not only so, but before September 1st, and on August 9, 1917, this account was transferred by the bank to the credit of Mrs. Bingham's executors.

It is therefore clear this fund was not, on the taxing date, employed in business outside of the state and exempt, as held by the lower court, but was in the hands of her personal representative for administration and distribution, and therefore taxable here under the Camden case, *supra*.

5. It also results from what we have already said that the $1,930,938.04 in the hands of the Flagler trustees

was liable for taxes here, and the lower court erred in holding it to be exempt.

Wherefore the judgment is affirmed upon the original appeal and on the cross-appeal it is affirmed upon the question of interest, but reversed as to the items of cash held respectively by the Guaranty Trust Co. of New York and the Flagler trustees, with directions to assess same.

Whole court sitting.