## Klein et al. v. Jefferson County Board of Tax Commissioners.

(Decided January 29, 1932.)

TRABUE, DULIN, HELM & HELM and JOHN P. HASWELL for appellants.

BAILEY P. WOOTTON, Attorney General, J. W. CAMMACK, Former Attorney General, M. B. HOLIFIELD, S. B. KIRBY, JR., Assistant Attorney General, and HARIS W. COLEMAN, County Attorney, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

After July 1, 1924 (which was and is the date for the valuation of property assessed for taxes due and collectable in the following year), the tax commissioners of Jefferson county assessed for state and county taxes against appellants, Junius C. Klein and others, the stock that

they held in the Standard Sanitary Manufacturing Company, a corporation doing business in the city of Louisville, and fixed its value at $95 per share. Later and within the time provided by law appellants appeared before the county board of supervisors for Jefferson county and protested, against the assessment of the stock at any value upon the ground (a) that it was nontaxable, and (b) that if mistaken in contention (a) the valuation fixed by the tax commissioners was excessive. The board overruled both grounds for the protest, and appellants prosecuted an appeal to the Jefferson county quarterly court, where they shared a similar fate, and they then journeyed to the Jefferson circuit court with a like result. From thence the case came to this court and the circuit court's judgment was affirmed in 230 Ky. 182, 18 S. W. (2d) 1009. An appeal to the United States Supreme Court was prosecuted by appellants, and it, in an opinion reported in 282 U. S. 19, 51 S. Ct. 15, 75 L. Ed. 140, 73 A. L. R. 679, affirmed the judgment of this court.

In due time the mandate from that court was filed in this one, followed by a similar process from this court to the Jefferson circuit court, and the latter thereupon entered a judgment conforming to the mandate from this court and fixed the amount of taxes due from appellants as based upon the assessment originally made, and further adjudged that the amount should bear interest from December 1, 1925, the due date at that time for the payment of taxes, and from and after which distraint therefor could be made by the proper collecting officer. Appellants objected to the order of the Jefferson circuit court requiring them to pay interest from any time prior to the entry of that order, but their objections were overruled, and this appeal therefrom by them involves the sole question as to whether the Jefferson circuit court correctly adjudged the payment of interest from the due date, supra, of the taxes.

Appellants start out with the argument that ordinarily taxes do not draw interest as do past-due obligations in private commercial transactions, and that occasions are rare when past-due taxes draw interest, unless there are specific statutory directions therefor. A number of cases are cited in substantiation thereof, and which is readily admitted by learned counsel for appellee, and with which no fault is found by us. However, the law is, and the opinions of this court so declare, that in excep-

tional cases where the taxpayer of his own volition militantly obstructs or prevents the collection of his taxes by resorting to preventative and obstructive processes, in the inauguration of litigation (or defense of litigation to collect the tax) followed by unsuccessful efforts to be relieved of it, interest is then chargeable from the date that the taxes under the law became due and distrainable. On the contrary, if the delay in the assessment, or in any step looking to its finality, is attributable to any dereliction on the part of the assessing authority, or of any governmental agency charged with such duties, then interest may not be collected until the assessment becomes final, and it is cases and authorities supporting the latter proposition upon which learned counsel for appellants erroneously rely.

The chief case relied on by appellants is that of Commonwealth v. Southern Pacific Co., 169 Ky. 296, 183 S. W. 925, 928, but the opinion in that case, when analyzed and viewed in the light of the facts disclosed by the record, instead of supporting the contention of appellants, or relieving them from the payment of the interest adjudged by the trial court, in reality sustains that judgment and supports the contention of learned counsel for appellee that the adjudged payment of interest from the designated date was and is proper. The disputed tax involved in that case rested upon an assessment made by the board of tax supervisors for Jefferson county for certain years beginning with and following 1909, and appeals were taken from those assessments to the Jefferson quarterly court, where they were permitted to remain and to be continued from time to time without action by that court, until the final determination of a similar prior assessment, then being litigated in the courts, and which later was finally disposed of in the Supreme Court of the United States, to which an appeal had been taken. After the disposition of that appeal, attention was directed to the dormant appeals in the quarterly court for assessments in subsequent years. They were then disposed of and the commonwealth contended for interest on the taxes for those years (the ones involved in the delayed appeals to the quarterly court) but we held in that opinion that the appeal to the quarterly court was but a course invoking a part of the assessing machinery provided by the state, and that such assessments did not become final until an adjudication in that (quarterly)

court of the appeals, and that, since the commonwealth had suffered them to remain without an adjudication of the matters involved, it would be inequitable for the taxpayer to be penalized with interest on his taxes in the absence of a statutory provision to that effect. That was the only reason assigned in the opinion for the disallowance of interest. The opinion refers to, analyzes, and comments on, prior opinions of this court bearing upon questions involved in that case, but the eventual reason for disallowing interest therein is stated in these words:

"So far as this record shows, the appellee is not responsible for this delay; it only exercised a right expressly granted by the statute. The commonwealth was the moving party, and it would seem to be its duty to urge such proceedings to a speedy determination, and if it fails to do so before the interest and penalties attach, it would be inequitable and unjust to enforce their collection. At any rate, the state agency charged with the duty of finally assessing this property on the appeal failed to discharge that duty, for some reason not entirely apparent from this record, before the time fixed for the interest and penalties to attach, and that failure should not be permitted to operate so as to penalize a taxpayer for not paying his taxes before his property has been finally assessed. . . . To do so would be to penalize a taxpayer for exercising the right of appeal (to the quarterly court, a part of the assessing machinery) which the statute expressly gives him. Clearly it could not have been the legislative purpose to exact from a taxpayer a penalty for failure to pay his taxes when the agency selected by the state for that purpose has not assessed his property in time for him to have voluntarily paid the tax in time to escape the penalty. To so interpret the statute would be to convict the General Assembly of a deliberate purpose to do a palpable wrong to the taxpayers, and this we do not believe and are not authorized to infer."

The opinion having held that the function of the quarterly court, on appeals to it from the county board of supervisors, was an assessing one, and that until it acted the assessment was incomplete, the conclusion reached was inevitable. The quarterly court therein, as

we have seen, did not act on the applications (or appeals) to it before the due date of the taxes and the accrual of the right to restrain therefor, and because of which no tender by the taxpayer before then could be made, and for which reason he ought not to be penalized with interest until the arrival of a date when he could make such tender and become relieved of the obligation to pay interest, although it might not be accepted. In other words, the opinion in that case laid the fault entirely at the door of the commonwealth, or the tax gathering authority, and nothing said therein in any wise militates against the doctrine theretofore declared by this court to the effect that if the property owner, either offensively or defensively, delays and obstructs the assessment of his property, or the collection of the taxes on it after final assessment by the proper authority, he should pay interest thereon from the date that it would have been collectable but for such action on his part. Some of such prior cases are, Henderson Bridge Co. v. Commonwealth, 120 Ky. 690, 87 S. W. 1088, 27 Ky. Law Rep. 1104; Louisville & N. R. R. Co. v. Commonwealth, 94 S. W. 655, 29 Ky. Law Rep. 666; and Bank of Kentucky v. Commonwealth, 107 S. W. 812, 32 Ky. Law Rep. 1087.

The case of Bingham's Adm'r v. Commonwealth, 199 Ky. 402, 251 S. W. 936, 942, approves the principle we have discussed with reference to the circumstances in which the taxpayer should be charged with interest. Some, if not all, of the cases referred to comment on statutory interest and penalties and when such charges may be collected, but all of which is quite independent of the principle here involved, i. e., the right to collect interest under facts and conditions that do not authorize the imposition of *statutory* interests and penalties, and which, we repeat, arises when the delay in the final assessment or collection is altogether due to obstructive methods employed by the taxpayer, and in which neither the sovereignty, nor its subdivision having the right to a portion of the tax did not in any wise contribute.

Many questions aside from the one involved in this case were discussed in the Bingham opinion, a large portion of which is a verbatim adoption of the written opinion of the learned trial judge in that case. That distinguished officer in his opinion, which we adopted as a part of ours, analyzed the opinions to which we have herein referred, and upon which counsel for appellants rely, and

deduced therefrom seven principles to be drawn from such analysis, and which are:

" '(1) Taxes, which constitute the public revenue, should be paid promptly by all when due; those who pay promptly would be discriminated against if those who do not, whatever the reason, were permitted to withhold and use without interest the money which should have been paid.

" '(2) Where there has been a timely assessment of property, in an action by the commonwealth to recover the amount of the unpaid tax 6 per cent. interest should, at any event, be allowed from the filing of the suit. Henderson Bridge Co. v. Commonwealth.

" '(3) Where property has not been assessed at the proper time, upon its subsequent assessment 6 per cent. interest should run upon the tax. L. & N. R. R. Co. v. Commonwealth; Bank of Kentucky v. Commonwealth.

" '(4) In such case, the time from which interest should run lies in the discretion of the court, dependent upon the attitude and conduct of the property owner, whether offensive or merely defensive.

" '(5) Where the property owner militantly delays the assessment, as by injunction, he should, upon ultimate failure, be charged with interest upon his taxes from the time they would have matured but for his dilatory intervention. L. & N. R. R. Co. v. Commonwealth.

" '(6) Where the property owner defensively delays the assessment, as by defending the commonwealth's action or by appeal from adverse judgment, he should, upon ultimate failure of his defense, be charged with interest from the time the assessment is made. Bank of Kentucky v. Commonwealth.

" '(7) Where the commonwealth delays the assessment, the taxpayer should be charged with interest only from the time of the assessment.' "

He concluded that under the facts of *that* case the taxpayer was guilty of no act, nor had he engaged in any conduct, that would deprive him of being relieved of the interest which the commonwealth sought to collect; but that, on the contrary, the commonwealth had failed in the manner therein pointed out to complete a final assess-

ment, which, under the principle hereinbefore announced, and sustained by the cases referred to (especially the Southern Pacific case), would deprive it of the right to claim or collect interest. However, the facts of this case clearly bring it within principle 6 of the classifications of the trial court, and which was approved by this one, and under which the taxpayer is chargeable with interest from the due date of the taxes following the final assessment in the Jefferson qualterly court.

The appeal by appellants to the Jefferson quarterly court was heard in that court on November 5, 1925, and the assessment of the county board of tax supervisors for that county was confirmed. That confirmation completed the necessary final assessment, referred to in the Southern Pacific Company case, and made the taxes due and collectable from and after the following due date, which was at that time, December 1, 1925, and from which date the judgment appealed from directs the payment of interest. We, therefore, see that the case upon which appellants' counsel chiefly rely is not applicable, nor does the holding in it fit the facts of this one. There, as we have seen, the final assessment growing out of the quarterly court's action was postponed throughout the years, pending litigation in other cases involving the same question, and the appeals to that court lay dormant throughout that time; while in this case the appeal to the quarterly court was promptly acted on and within time to make the taxes due on the date from which the contested interest should be and was calculated.

Principle 6, supra, embodies a just rule. After all, it is but an announcement that the highway through the court may not be *voluntarily* traveled to the destination of defeat without the payment of toll, nor may a litigant on his own volition pursue that route without incurring risks. To uphold the contention of appellants herein would be the establishment of a doctrine that would enable every taxpayer to retain the amount of his taxes in his pocket until he could pass through all the courts available to him on his own volition and in his own leisurely fashion, and at the end of a fruitless journey discharge his obligation by the payment of the same amount that was legally demandable of him from the beginning. Such a course, if pursued by any considerable number of people, would much impair the public treasury, followed by great inconvenience and costs to the

sovereignty, with no hope or prospects of remuneration, and no such free obstructive right has ever been approved by this court, nor, so far as we have been able to discover, by any other one. A more extended analysis of our prior opinions we deem unnecessary, since that task may be performed by the reader consulting them.

Wherefore, for the reasons stated, the judgment is affirmed.