## Klein et al. v. Jefferson County Board of Tax Supervisors et al.

(Decided June 21, 1929.)

MATT O'DOHERTY and JOHN P. HASWELL for appellant.

J. W. CAMMACK, Attorney General, SAMUEL B. KIRBY, JR., Assistant Attorney General, and HARRIS COLEMAN, County Attorney, for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Affirming.

Junius Klein in the year 1925 owned a large block of stock in the Standard Sanitary Manufacturing Company. The assessor, in making the assessment for that year, valued the stock at $95 a share. Klein, and other taxpayers similarly situated, applied to the board of supervisors of tax of Jefferson county for relief from the assessment. The board refused to modify it. They then appealed to the Jefferson quarterly court. The quarterly court heard the case, and on December 4, 1925, entered a judgment sustaining the action of the assessor and of the board of supervisors. Klein appealed to the Jefferson circuit court. The case was finally heard in the Jefferson circuit court on April 2, 1928. The circuit court sustained the judgment of the quarterly court. Klein appeals to this court. The case was submitted on September 19, 1928, but time was given the appellees to file brief, and the final briefs were not filed until June 7, 1929. The case was then sent out to the court.

The Standard Sanitary Manufacturing Company is a corporation formed under the laws of the state of New Jersey. It had outstanding, in 1925, 805,106 shares of stock, of the par vaule of $25. Over three-fourths of the total properties of the corporation are located outside of Kentucky, and a little less than one-fourth is located within the state of Kentucky. The book value of the common stock of the company on December 31, 1924, was $41.93 per share. But the stock was in fact selling in the market for about $100 per share in July, 1925. In February 1925, it sold as high as $145 a share. The corpor-

ation paid its taxes in the state of Kentucky. Klein contends: (1) The stockholders cannot be taxed under the Constitution of Kentucky. (2) The assessment at $95 a share is not warranted. (3) The assessment is a denial to him of the equal protection of the law under the Fourteenth Amendment to the Constitution of the United States.

Section 171 of the Constitution provides:

"Taxes shall be levied and collected for public purposes only and shall be uniform upon all property of the same class subject to taxation within the territorial limits of the authority levying the tax; and all taxes shall be levied and collected by general laws. The general assembly shall have power to divide property into classes and to determine what class or classes of property shall be subject to local taxation."

Section 4088, Kentucky Statutes, passed pursuant to this provision of the Constitution, provides:

"The individual stockholders of a corporation, at least seventy-five per cent. (75%) of whose total property is taxable in Kentucky, shall not be required to list their shares for taxation so long as the corporation pays taxes on all its property in Kentucky (including the corporate franchise when the franchise is required to be assessed), provided the shareholder furnishes satisfactory proof to the taxing authorities that at least three-fourths of the total property of such corporation is taxed in Kentucky."

In Shinkle's Estate v. Kenton County Board of Supervisors, 216 Ky. 60, 287 S. W. 210, this court thus stated its conclusion under these provisions:

"It seems to be well settled that it is within the legislative power to tax the property of a corporation at its fair cash value, including its franchise, and at the same time requires the stockholders to list and pay taxes upon the shares of stock held by them without violating any of the provisions of our Constitution or of the federal Constitution. Franklin County v. Bank of Frankfort, 87 Ky. 370 (9 S. W. 212, 10 Ky. Law Rep. 506); McElroy, Sheriff, v. Walsh's Trustee, 133 Ky. 113 (106 S. W. 240, 117 S. W. 398). In the last case above cited the court ob-

served: 'While it is true the state may have taxed the franchise, which includes the capital of the corporation, and taxed also the shareholder upon his shares, it has not done so.' The principle was well expressed by the Supreme Court of the United States in New Orleans v. Houston, 119 U. S. 265 (7 S. Ct. 198, 30 L. Ed. 411), where it was said: 'It is well settled by the decisions of this court that the property of shareholders in their shares, and the property of the corporation in its capital stock, are distinct property interests, and, where that is the legislative intent clearly expressed, that both may be taxed.' See, also, Tennessee v. Whitworth, 117 U. S. 129 (6 S. Ct. 645, 29 L. Ed. 830); Bank of Commerce v. Tennessee, 161 U. S. 134 (16 S. Ct. 456, 40 L. Ed. 645); Cooley on Taxation, vol. 1, sec. 246.''

The same question was reconsidered in Siler v. Board of Supervisors, 221 Ky. 100, 298 S. W. 189. The court again said:

"The Fourteenth Amendment to the federal Constitution is not a protection in all cases against unwise state legislation. It imposes no fixed rule of taxation upon the states. It protects against such discrimination as amounts to a denial of the equal protection of the law or a deprivation of property without due process of law. There is nothing in that amendment that forbids states enacting laws providing for double taxation so long as the law bears uniformly on all property within the particular class and do not discriminate against one taxpayer in favor of another. It is not double taxation, however, in our judgment, to require the assessment of the property of a corporation as a corporate entity and also require the assessment of the shares of stock of the corporation in the hands of individual holders.''

In that case it was contended by Siler that it was a discrimination to require the assessment of shares of stock in the hands of individual holders if the corporation owned less than 75 per cent. of its total property in Kentucky, and to exempt the shares of stock in a corporation from assessment where it owned 75 per cent. or more of its total property in Kentucky. The court, after considering a number of cases, rejected this contention in these words: ''After a careful consideration of the

facts alleged in appellant's petition and the law applicable thereto, we have reached the conclusion that the action of the board of supervisors was correct, and that appellant was entitled to no relief from the assessment thus imposed upon him." Page 106 of 221 Ky. (298 S. W. 192).

Upon reconsideration of the question, the court adheres to the conclusion it then reached. Under the Constitution the Legislature is expressly authorized to classify property. The classification here made rests upon a reasonable foundation, and necessarily in such matters the question must be left to the judgment of the Legislature.

Appellant complains that his property is assessed at $95 a share, when land in Jefferson county is only assessed at about 70 per cent. of the average sale value, in voluntary sales. In the classification of property land is placed in one class, corporate stock in another. They are taxed at different rates. Appellant cannot at least complain that property in a different class from his property is assessed too low, unless the inequality is gross, or such as to show an unreasonable discrimination. This is not shown. The proof shows that the purchaser of land is generally a person who wants that property, and is willing to pay more for it than one who does not need it. Private sales are usually made on credit, and people will pay more for property on credit than for cash. The board of tax commissioners, sitting in Louisville and acquainted with local conditions, judged that 70 per cent. of the sale values represented about fairly the cash value of real estate. Some weight must be given to their judgment, for after all this is a matter of judgment. On the other hand, appellant's stock is valued according to the price it was bringing day by day on the stock market. He does not deny that his stock was selling at $95 a share day by day. There is no better way of fixing the actual cash value of a thing than the average of such daily sales for cash. The Constitution of the state requires that all property shall be assessed at its fair cash value, at voluntary sale. The court is unable to see, therefore, that appellant is entitled to any relief under the Constitution of Kentucky.

He earnestly insists that he is denied by the statute the equal protection of the law and relies on the case of Louisville Gas Co. v. Coleman, 277 U. S. 32, 48 S. Ct. 423, 72 L. Ed. 770. In that case the Supreme Court reversed

this court, and held that the statute taxing mortgages running over five years and not taxing mortgages running five years or less was invalid, on the ground that the classification was arbitrary. It is insisted that the same rule should be applied here. But the court is unable to see that it has any application. That case seems to rest upon the idea that long-time mortgages are made by corporations and short-time mortgages are made by the poor, whose credit is not good, and that the statute taxed the corporations and exempted from taxation individuals. But there are no such facts here. All corporations and all individuals are treated exactly alike on the same state of facts. There is a substantial reason for putting stockholders in corporations not paying taxes in Kentucky on so much of their property on a different footing from those so paying taxes in Kentucky. When the corporation's property is all in Kentucky, and its property is all assessed and the taxes are paid thereon, the property so taxed has in fact borne its fair share of the public burden. Not to assess the stockholder on his stock then is simply to treat the corporation as a firm is treated.

But the Legislature perceived that to do justice a line must be drawn; for, if 1 per cent. of the property of the corporation was not assessed, injustice would be done to assess the stockholders, so to do substantial justice the Legislature fixed 75 per cent. as the basis. But a large part of the property in any state is never assessed at its fair value. This is known of all men, and so the Legislature, when it came to consider whether stockholders in corporations should be taxed, where the corporation had paid taxes on all its property, did not require that the taxes should be paid by the corporation upon 100 per cent. of its property, but fixed a basis of 75 per cent. The reason was to allow a margin. It was an effort to put everybody upon equality, and not to require the stockholders to pay when the corporation had paid on an assessment of its property as large as that of much of the property in the state. The act of the Legislature is simply an effort to approximate justice by a classification resting on reasonable grounds, which are familiar to any one who knows anything of the assessment of property in the state. The classification which the Legislature made was not in the interest of the poor man or against the corporation.

By the statute in force for many years the stockholder was not taxed on his stock, if the corporation paid the taxes on its property and its franchise tax. See Kentucky Statutes 1903, secs. 4085, 4088. Perceiving that this was unjust where the corporation only paid taxes on a small part of its property, the Legislature amended the statute, so as to make it only applicable when the corporation paid taxes in Kentucky on one-fourth of its property. Kentucky Statutes 1922, sec. 4088. Considering that much property in the state was thus escaping taxation when the corporation paid taxes here on only one-fourth of its property and the stockholders were not taxed on their stock, the Legislature again amended the statute and put it in the form above quoted. It was realized that a reasonable line should be drawn; a small deficiency should not defeat the statute. The stockholder should not be taxed, if the corporation was in substance paying taxes in Kentucky on all its property. The allowance of a margin of 10 per cent. plainly would not have been unreasonable. The allowance of 25 per cent. was equally plainly a reasonable effort to do justice to all, in view of the way all our other assessments are made.

Appellant's property is taxed just like all other property, and that the stock of stockholders in corporations paying taxes on more than 75 per cent. of their property is not taxed is of no more concern to him than to every other taxpayer in the state. The question here presented is whether appellant was properly taxed. In Hart Refineries v. Harmon, 49 S. Ct. 188, 73 L. Ed. —, the United States Supreme Court, citing a number of previous cases, said this:

"But, because the state Legislature could have laid a tax upon the use of the commodity as well as upon its sale, it by no means follows that a failure to do so constituted a discrimination forbidden by the equal protection clause of the Fourteenth Amendment. That clause does not prohibit classification, and the power of the state to classify for purposes of taxation is of wide range and flexibility, provided that the classification rest upon a substantial difference, so that all persons similarly circumstanced will be treated alike. Statutes which tax one class of property while exempting another class necessarily result in imposing a greater burden upon the prop-

erty taxed than would be the case if the omitted property were included. But such statutes do not create an inequality in the constitutional sense. Nor is the imposition of an excise tax upon one occupation or one activity from which other and different occupations or activities are exempt, a denial of equal protection. It is enough if all in the same class are included and treated alike. These propositions are so firmly established by repeated decisions of this court that further discussion is unnecessary."

This seems to the court to apply equally well here. In the making of a classification a line. must be drawn somewhere. In the following cases statutes were sustained making classifications similar to that here: A statute fixing the rates of fare on railroads according to their length, 15 miles, from 15 to 75 miles, over 75 miles. Dow v. Beidelman, 125 U. S. 680, 8 S. Ct. 1028, 31 L. Ed. 841. A statute permitting railroads less than 50 miles in length to heat passenger cars by stove or furnace or to operate trains without a complete crew. New York, etc., Railroad Co. v. New York, 165 U. S. 628, 17 S. Ct. 418, 41 L. Ed. 853; Chicago, etc., R. R. Co. v. Arkansas, 219 U. S. 453, 31 S. Ct. 275, 55 L. Ed. 290. A statute providing for inspection in mines employing six men or more, but not to those employing five, or requiring screens where ten men were employed. Consolidated Coal Co. v. Illinois, 185 U. S. 203, 22 S. Ct. 616, 46 L. Ed. 872; McLean v. Arkansas, 211 U. S. 539, 29 S. Ct. 206, 53 L. Ed. 315. A statute requiring a washroom at the request of 20 employes, but not where only 19 requested. Booth v. Indiana, 237 U. S. 391, 35 S. Ct. 617, 59 L. Ed. 1011. The same rule was applied to Workmen's Compensation Laws which only apply to employers of certain number of men, Jeffery Manufacturing Co. v. Blagg, 235 U. S. 571, 35 S. Ct. 167, 59 L. Ed. 364; and to fire inspection laws applicable to hotels having 50 rooms, Miller v. Strahl, 239 U. S. 426, 36 S. Ct. 147, 60 L. Ed. 364; or to the herding of sheep within two miles of a dwelling house, Bacon v. Walker, 204 U. S. 311, 27 S. Ct. 289, 51 L. Ed. 499; or exempting banks whose transactions average $500 or more, Engel v. O'Malley, 219 U. S. 128, 31 S. Ct. 190, 55 L. Ed. 128. Any number of similar cases might be cited. In Citizens' Telephone Co. v. Fuller, 229 U. S.

322, 33 S. Ct. 833, 57 L. Ed. 1206, the court thus stated the rule:

> "Granting the power of classification, we must grant government the right to select the differences upon which the classification shall be based, and they need not be great or conspicuous. Keeney v. (Comptroller of) New York, 222 U. S. 536, 56 L. Ed. 305, 38 L. R. A. (N. S.) 1139, 32 S. Ct. 105. The state is not bound by any rigid equality. This is the rule; its limitation is that it must not be exercised in 'clear and hostile discriminations between particular persons and classes.' See Quong (Wing) v. Kirkendall, 223 U. S. 59, 62, 63, 56 L. Ed. 350-352, 32 S. Ct. 192. Thus defined and thus limited, it is a vital principle, giving to government freedom to meet its exigencies, not binding its action by rigid formulas, but apportioning its burdens, and permitting it to make those 'discriminations which the best interests of society required.' "

The classification made by the Legislature is just and reasonable, and is clearly such a discrimination as the best interests of society require. Where the Legislature has classified property, taxes must be uniform on each class of property; but the taxes on the different classes are not required to be uniform, for this is the purpose of classification. Under the statute appellants' stock pays only state taxes on its assessment, and is exempt from all local or municipal taxation, which amounts to much more than the state taxes, a burden that real estate bears; so on the whole case it appears to the court that he cannot complain that he is denied the equal protection of the law, or that injustice has been done to him.

Under the power to classify property, the Legislature is not required to put all stockholders in one class, but may make a reasonable classification of stockholders. The classification placing those in one class where the corporation has paid taxes in Kentucky on 75 per cent. of its property, and those in another class where the corporation has paid taxes in Kentucky on less than 75 per cent. of its property, rests on reasonable grounds. Appellant cannot complain that land in Jefferson county is equalized at 70 per cent.; for land is equalized in each county by the county board, because land values depend on local conditions; but intangible property is equalized

by the state board, and is uniform throughout the state. Siler v. Board of Supervisors, 221 Ky. 102, 298 S. W. 189.

Judgment affirmed.