Herschel ST. LEDGER, and Z. Nicki St. Ledger, Individually and on Behalf of Others Similarly Situated, Appellants/Cross–Appellees,

v.

COMMONWEALTH of Kentucky, Revenue Cabinet, and C. Emmett Calvert, in his official capacity as Secretary of the Revenue Cabinet, Appellees/Cross–Appellants.

Nos. 94–SC–468–DG, 94–SC–875–DG.

Supreme Court of Kentucky.

Oct. 19, 1995.

Rehearing Denied Jan. 18, 1996.

Kenneth S. Handmaker, D. Randall Gibson, Augustus S. Herbert, Middleton & Reutlinger, Louisville, for appellants/cross-appellees.

Thomas A. Brown, Mark F. Sommer, Greenebaum, Doll & McDonald, Louisville,

for amicus curiae Kentucky Chamber of Commerce.

Charles S. Cassis, Stephen R. Schmidt, Brown, Todd & Heyburn, Louisville, Jennifer Sartor Smart, Department of Revenue, Legal Services, Frankfort, for appellees/cross-appellants.

STEPHENS, Chief Justice.

## INTRODUCTION

In this appeal, we are addressing the constitutionality of Kentucky's *ad valorem* tax provisions. Specifically, we determine the validity of two provisions pertaining to the taxation of bank deposits located outside the Commonwealth and to certain corporate shares. KRS 132.020; KRS 132.030; KRS 136.030(1). In addition to making a determination as to these two specific provisions we have also been requested to determine the constitutionality of the entire intangibles tax scheme, if this Court finds that these two individual provisions are invalid.

The intangibles tax scheme in Kentucky levies an *ad valorem* tax upon intangibles, which include bank deposits and corporate shares, at the rate of 25 cents per 100 dollar value. KRS 132.020 and related statutes. However, two statutes within these provisions create the questions that are being considered here.

KRS 132.030 effectively lessens the amount of tax upon "deposit[s] in any bank, trust company, or combined bank and trust company organized under the law of this state, or in any national bank of this state." For in-state accounts the rate is lowered from the 25 cents per 100 dollars of value cited in KRS 132.020 to one-thousandth of one percent (0.001%) on the amount of the holding. KRS 132.030(1). The rate of taxation on certain corporate shares is modified by KRS 136.030 [hereinafter "the exemption statute"]. This statute creates an exemption for shareholders of corporations that "pays taxes to the state of Kentucky on at least 75% of its total property, wherever located." KRS 136.030(1)(a).

Appellants assert that these specific provisions are unconstitutional under U.S. Const. Art. I, sec. 8, Cl. 3, the commerce clause; U.S. Const. Amend. XIV, sec. 1, equal protection clause; and under Ky. Const. secs. 3 and 171, the equal protection provision and the classification, uniformity, and equality provision.

## PROCEDURAL HISTORY

The Jefferson Circuit Court certified two classes, those who hold bank deposits in out-of-state banks and those who own stock in corporations that do not qualify for the exemption outlined in KRS 136.030(1). After a bench trial, the Circuit Court found that the exemption statute is "obviously unenforceable as written" and is "so incomplete or conflicting in provisions that [it] cannot be executed and will be declared void." As a result of this conclusion, the Circuit Court did not reach the commerce clause question on the exemption statute. As to the modified tax rate on bank deposits held in in-state banks, the Circuit Court concluded the statute violated the commerce clause and was unconstitutional. The Circuit Court also held that out-of-state bank deposits were to be taxed in the same manner as in-state deposits. Further, the Circuit Court held that appellants were entitled to apply for refunds of taxes paid for the preceding two year period pursuant to KRS 134.590.

The Court of Appeals reversed, holding the exemption statute enforceable and valid. The Court of Appeals further held that the entire intangibles tax scheme did not violate the Equal Protection Clause of the U.S. Constitution and the similar provision in the Kentucky Constitution, sec. 3. As to the commerce clause issues, the Court of Appeals determined that both provisions were constitutionally valid. The corporate shares tax was deemed valid under a "compensatory tax" theory and the bank deposits tax fell outside of the commerce clause protection since the bank deposits did not "fall into the category of interstate commerce."

### The Bank Deposits Tax

■ We first turn to the issue of the tax on bank deposits. It is clear to this Court that KRS 132.030 changes the rate of taxation on domestic bank accounts as compared to those accounts held in institutions located

out-of-state. Appellants assert that this provision is violative of the equal protection provisions of both the Kentucky and U.S. Constitution as well as the Commerce Clause. The questions regarding violations of equal protection principles have already been addressed by the United States Supreme Court in *Madden v. Commonwealth of Kentucky*, 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590 (1940). This Court concludes that *Madden* is dispositive and controlling, and therefore reversal is not warranted on this issue.

In *Madden*, Kentucky created two different classes of people, those who had accounts in Kentucky banks and those who had deposits in out-of-state institutions. The United States Supreme Court concluded that the state had a legitimate purpose when taxing out-of-state accounts at a higher rate due to the expense of collecting taxes on those accounts. Therefore, the Court held that the bank deposits tax did not violate the equal protection clause. The same reasoning applies in this case.

Appellants urge this Court to recognize that the United States Supreme Court's holding in *Metropolitan Life Ins. Co. v. Ward*, 470 U.S. 869, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985), heightened the standard applied in *Madden* in fact situations similar to the one under review. Appellants characterize *Metropolitan Life Ins.* as follows: "We hold that under the circumstances of this case, promotion of domestic business by discrimination against nonresident competitors is not a legitimate state purpose." *Id.* at 882, 105 S.Ct. at 1683. However, this court understands that the purpose of the higher tax on out-of-state bank deposits is to cover the increased costs of collection of that tax. This classification of taxable groups is not "based *solely* upon an in-state/out-of-state characterization" as appellants assert. As a result, this court cannot hold that this tax is violative of the equal protection clause.

■ Appellants also urge this Court to conclude that the bank deposits tax fails under Kentucky Constitution sec. 171. Appellant maintains that the bank deposits tax is not "uniform upon all property of the same class." Kentucky Constitution, sec. 171. In order for this tax to satisfy the mandate of sec. 171 of the Kentucky Constitution, the classification which distinguishes in-state accounts from out-of-state accounts must not be "artificial, arbitrary [or] unreasonable." *Gillis v. Yount*, Ky., 748 S.W.2d 357, 363 (1988).

■ To make this determination, we must decide whether the classification "is ... related to the constitutionally permissible classification for tax purposes." *id.* The purpose of this distinction is related to the increased costs of the tax collection on out-of-state accounts. We find this classification "depend[s] upon natural, real [and] substantial distinctions, inhering in the subject matter, such as suggest the necessity for ... independent legislation in regard to the class specified." *Gillis*, 748 S.W.2d at 363, *quoting Bd. of Educ. of Jefferson Co. v. Bd. of Educ. of Louisville*, Ky., 472 S.W.2d 496, 498 (1971). Therefore, KRS 132.030 does not violate the Kentucky Constitution.

■ Next, we turn to the question of the commerce clause and its effect on the validity of this statutory provision. After undertaking a constitutional analysis of this issue, the Court of Appeals concluded that the tax was constitutional and not in violation of the commerce clause. This holding was based upon the premise that the commerce clause did not apply to the bank deposits tax because bank deposits do not constitute interstate commerce. The Court of Appeals stated:

> "All objects of interstate trade merit Commerce Clause Protection; none is excluded by definition at the outset." *City of Philadelphia v. New Jersey*, 437 U.S. 617, 622, 98 S.Ct. 2531, 2534, 57 L.Ed.2d 475, 480 (1978). It complements reason that if the object being taxed is not one of interstate trade the commerce clause will not apply.... [T]he imposed tax herein is not on an object of interstate trade, it is an *ad valorem* property tax on bank deposits. While it seems likely that a deposit in a bank established in several states would be an object in interstate commerce, there is no possibility of that here.

The Court of Appeals determined that KRS 287.030(3) prohibits the finding that these

deposits are objects of interstate commerce. The statute states:

No bank incorporated under the laws of another state or national bank having its principal place of business outside this state shall transact any banking business in this state except to lend money.

KRS 287.030.

■ This Court cannot agree with this conclusion. While it may be tempting to ascertain that because of this statute, the deposits are not items of interstate commerce, the purposes of the United States Constitution may not be thwarted. This Court recognizes that we must enforce constitutional limitations. "[W]e must apply the Constitution ... for to do otherwise would breach the social compact which binds us one to another and would amount to an abdication of judicial responsibility." *Fischer v. State Board of Elections,* Ky., 879 S.W.2d 475 (1994).

■ There is no question but that deposits made by in-state residents in banks located out-of-state are anything but interstate transactions, falling under the protective realm of the commerce clause. The language of KRS 287.030 has no effect on what transactions may occur between in-state residents and out-of-state banks, at the initiation of the resident. This in and of itself is the transaction in interstate commerce that is affected by imposition of the statutory modification of the tax rate. It is clear that this statute "imposes a tax [differential] which discriminates against interstate commerce ... by providing a direct commercial advantage to local business." *Northwestern States Portland Cement Co. v. Minnesota,* 358 U.S. 450, 459, 79 S.Ct. 357, 362, 3 L.Ed.2d 421 (1959).

This situation is not unlike the one considered in the United States Supreme Court's review in the case of *Boston Stock Exchange v. State Tax Commission,* 429 U.S. 318, 97 S.Ct. 599, 50 L.Ed.2d 514 (1977). The holding in *Boston Stock Exchange* involved a New York state statute which imposed a tax on transfers of securities. The tax was higher on in-state transfers resulting from out-of-state sales than transfers resulting from in-state sales. The United States Supreme Court held that this tax violated the commerce clause of the Federal Constitution. The violation occurred because the tax created an advantage for in-state stock exchanges and a discriminating burden on interstate commerce. The Court reasoned that the tax, in effect, foreclosed a consumer's ability to make tax-neutral decisions regarding their interstate transactions. The *Boston Stock Exchange* decision rests on the notion that investment funds are items in interstate commerce. Bank deposits are investment funds, and therefore, items in interstate commerce.

In this case, KRS 132.030 creates the same situation with regard to placement of bank deposits. Residents making a choice of where to deposit funds will be influenced by the higher tax rate on out-of-state deposits. As a result, the statute "forecloses tax-neutral decisions and creates both an advantage for the [banks in Kentucky] and a discriminatory burden on commerce to its sister States." *Boston Stock Exchange,* 429 U.S. at 331, 97 S.Ct. at 608.

Since this Court is bound by constitutional proscriptions, we hold that the bank deposits tax is clearly violative of the commerce clause.

### *CORPORATE SHARES TAX*

We turn our attention to the constitutional questions to be considered with respect to the tax on corporate shares. As previously stated, KRS 132.020(1) levies an *ad valorem* tax of 25 cents "upon each one hundred dollars ($100) of value of all money in hand, shares of stock...." KRS 136.030(1), the exemption statute, however, exempts the individual stockholders from paying this tax when "the corporation [in which they own shares] pays taxes to the state of Kentucky on at least 75% of its total property, wherever located."

Appellants argue that this exemption is unconstitutional under U.S. Const. Art. I, sec. 8, Cl. 3, the commerce clause; the 14th Amendment, the equal protection clause; and Kentucky Constitution sections 3 and 171.

■ We will first address Appellants' contentions regarding the equal protection

clause of the United States Constitution and secs. 3 and 171 of the Kentucky Constitution. The Court of Appeals concluded that existing precedent in the case of *Klein v. Jefferson County Board of Tax Supervisors,* 230 Ky. 182, 18 S.W.2d 1009 (1929), *aff'd,* 282 U.S. 19, 51 S.Ct. 15, 75 L.Ed. 140 (1930), is the guiding case law on this issue. We agree.

In *Klein,* a similar exemption statute was challenged as being arbitrary and in violation of the equal protection clause. The appellant owned shares in a corporation where "less than 75 per cent of [its] total property was taxable in Kentucky." *Klein,* 282 U.S. 19, 22, 51 S.Ct. 15, 15 (1930). He maintained "that the discrimination between himself and holders of stock in a corporation paying taxes on more than 75 per cent of all their property is arbitrary and denies to him the equal protection of the laws." *Id.* The United States Supreme Court held that fixing the percentage of ownership at 75 per cent was "a reasonable effort to do justice to all in view of the way all our other assessments are made." *Id.* at 23, 51 S.Ct. at 16. The *Klein* Court held that this "reasonable effort" satisfied the equal protection challenge.

All that is required is a rational relationship of the tax to the objective of the tax. The Revenue Cabinet has argued that one objective of the exemption is to avoid double taxation. In effect, this exemption allows the Commonwealth to collect *ad valorem* taxes only once from owners of a corporation. Therefore, the rational relation exists, and, as a result we hold that there is no violation of the equal protection clause as to the taxation of corporate shares.

This is not the end of our constitutional analysis, however. Now, we must turn to the commerce clause and its limiting effect on this statutory provision.

■ Appellants assert that the corporate shares tax scheme patently discriminates against interstate commerce by imposing a greater tax burden on shares of stock held in corporations that do not locate 75% or more of their property in the state of Kentucky than those who do.

■ The commerce clause states "the Congress shall have power . . . to regulate commerce with foreign Nations, and among the several States. . . ." U.S. Const. Art. I, sec. 8, Cl. 3. The most basic principle of the commerce clause is to "create an area of free trade among the several states." *McLeod v. J.E. Dilworth Co.,* 322 U.S. 327, 331, 64 S.Ct. 1023, 1026, 88 L.Ed. 1304 (1944). "The commerce clause . . . is a limitation upon the power of the states." *Freeman v. Hewit,* 329 U.S. 249, 253, 67 S.Ct. 274, 276, 91 L.Ed. 265 (1946). No state "may impose a tax which discriminates against interstate commerce . . . by providing a direct commercial advantage to local business." *Northwestern States,* 358 U.S. at 459, 79 S.Ct. at 362. Allowing states, through legislative enactments to create commercial advantages for local areas "invite[s] a multiplication of preferential trade areas destructive" of the free trade which the clause is intended to protect. *Dean Milk Company v. Madison,* 340 U.S. 349, 357, 71 S.Ct. 295, 299, 95 L.Ed. 329 (1951).

■ As a result of these basic principles, "the [commerce] clause has long been understood to have a 'negative' aspect that denies the states the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Oregon Waste Systems v. Dept. of Env. Quality,* —— U.S. ——, ——, 114 S.Ct. 1345, 1349, 128 L.Ed.2d 13 (1994). Due to this effect of the commerce clause, legislatures and courts have been confronted with questions addressing the taxing powers of a state. The central theme of these cases is the creation of a dividing line between the constitutional goal of developing a national free-flowing economy and the individual state's need for a revenue source. Where this line is drawn "turns on the unique characteristics of the statute at issue and the particular circumstances in each case." *Boston Stock Exchange v. State Tax Commission,* 429 U.S. 318, 330, 97 S.Ct. 599, 606, 50 L.Ed.2d 514 (1977). *See also, Freeman v. Hewit,* 329 U.S. at 253, 67 S.Ct. at 276 (1946).

■ The United States Supreme Court opinions of *Oregon Waste* and *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), provide guid-

ance as to the analytical process in determining the validity of a state tax. The Court of Appeals addressed the four part test set forth in *Complete Auto Transit*, and we agree that this is the proper point from which to begin. A state tax will be sustained against a commerce clause challenge, "... when the tax [1] is applied to an activity with a substantial nexus with the taxing state, [2] is fairly apportioned, [3] does not discriminate against interstate commerce, and [4] is fairly related to the services provided by the State." *Complete Auto Transit*, 430 U.S. at 279, 97 S.Ct. at 1079. The Court of Appeals "summarily conclude[d] that the tax under attack easily satisfies prongs (1), (2), and (4) of [the] test." We agree.

A taxpayer's residence in Kentucky while owning and reaping benefits from the corporate shares provides the substantial nexus required by the first prong of the *Complete Auto Transit* test. This Court has recognized that the second prong, fairly apportioned, is satisfied by the same factors that satisfy the "substantial nexus" requirement. *Revenue Cabinet v. Budget Rent–A–Car*, Ky., 704 S.W.2d 199, 202 (1986). We agree, therefore, in this case the second prong is also satisfied. The fourth prong of the *Complete Auto Transit* test is also satisfied. The United States Supreme Court has determined that requirement (4) is met "[w]hen a tax is assessed in proportion to a taxpayer's activities or presence in a State." *Commonwealth Edison Co. v. Montana*, 453 U.S. 609, 627, 101 S.Ct. 2946, 2958, 69 L.Ed.2d 884 (1981). The shareholders affected by KRS 132.020 are citizens who derive benefits from Kentucky. Therefore the tax is fairly related to the services provided by the state, because the "taxpayer is shouldering its fair share of ... 'the advantages of a civilized society.'" *Commonwealth Edison*, 453 U.S. at 627, 101 S.Ct. at 2958, *quoting Japan Line, Ltd. v. County of Los Angles*, 441 U.S. 434, 445, 99 S.Ct. 1813, 1819–20, 60 L.Ed.2d 336 (1979).

We also believe, as did the Court of Appeals, that the third prong requires further analysis. However, we turn to the case of *Oregon Waste*, which the Court of appeals did not address, to determine the correct standards to be applied in this case.

The United States Supreme Court explains in *Oregon Waste* that the first analytical step in determining whether a statute is unconstitutional under the negative commerce clause principles is to ascertain whether the statute discriminates against interstate commerce or whether the regulation has only incidental effects on interstate commerce.

As defined in *Oregon Waste*, "'discrimination' simply means differential treatment of in-state and out-of-state *economic interests* that benefits the former and burdens the latter." *Oregon Waste*, —— U.S. at ——, 114 S.Ct. at 1350. (emphasis added). We emphasize the language "economic interests" because while there are no goods crossing state lines here, there are in-state and out-of-state economic interests affected by this legislation. Companies interested in raising capital through the issuance of stock shares are having potential investors' decision-making processes affected by this legislation. Companies paying taxes to the state of Kentucky for 75% or more of their property will become more "investment attractive" than those companies that do not. Such factors impact commerce and the commerce clause is at issue. We conclude that the statute is discriminatory.

Appellee argues that St. Ledger is incorrect when it argues that if a tax is found to be discriminatory on its face, it is *per se* invalid. Respondent states "[e]ven a provision that 'clearly discriminates' against interstate commerce can be sustained if the measure is justified on grounds unrelated to economic protectionism." *Appellee's brief*, p. 31.

After carefully reviewing Supreme Court precedent, we recognize that respondent is only partially correct. The actual standard stated by the United States Supreme Court is found in *Oregon Waste*, at ——, 114 S.Ct. at 1351, and requires that a facially discriminatory statute must "be invalidated unless respondents can [also] 'sho[w] that it advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives.'" *quoting New Energy Co. of Indiana v. Limbach*, 486 U.S. 269, 278, 108 S.Ct. 1803, 1810, 100 L.Ed.2d 302 (1988). The determination that

the statute is discriminatory on its face shifts the burden of proof from appellant being required to show that the burden is "clearly excessive in relation to the putative local benefits" *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 143, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970), to the respondent as stated above. Further, constitutional validity also requires that the justification for the discrimination must pass the strictest scrutiny.

The Court of Appeals held that "[b]ased upon the clear and unambiguous language of the general *ad valorem* tax statute and the exemption statute, ... the Kentucky *ad valorem* tax scheme on shares is facially discriminatory against interstate commerce." We agree. The exemption statute effectively discriminates between transactions based upon interstate elements. First, a potential stockholder who is a Kentucky resident and is contemplating investment in a corporation will find the stock in the corporation whose property is primarily (75% or more) located in the state of Kentucky more attractive than that of a corporation whose property is primarily located outside the state. As a result, and at a minimum, the investor has had his investment decision affected by this tax provision. This alone constitutes an interference with interstate commerce.

Furthermore, this investment decision inevitably affects interstate commerce by channeling the flow of capital into businesses whose property assets are primarily (75% or more) located in Kentucky. This flow of capital no longer operates under the framework of a free market economy as the drafters of the U.S. Constitution intended. Rather, this change in the manner which Kentucky residents invest funds operates in such a way as to "provid[e] a direct commercial advantage to local business." *Northwestern States,* 358 U.S. at 459, 79 S.Ct. at 362.

The effects of this legislation on interstate commerce may be carried a step further by examining its impact on corporate decision making. Companies seeking to attract investors will be encouraged to maintain their property holdings in the state of Kentucky. However, the placement of facilities in this state may not prove to be the most prudent business tactic from a financial or operational perspective, thereby possibly increasing costs of production when these costs could easily have been avoided had the tax regulation not been enacted.

 As a result of our determination that the exemption statute is discriminatory on its face, the standard articulated in *Oregon Waste* applies. Therefore, the Revenue Cabinet is required to "sho[w] that [the statute] advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *New Energy Co. of Indiana v. Limbach,* 486 U.S. 269, 278, 108 S.Ct. 1803, 1810, 100 L.Ed.2d 302 (1988). Further, "justifications for discriminatory restrictions on commerce [must] pass the 'strictest scrutiny.'" *Oregon Waste,* —— U.S. at ——, 114 S.Ct. at 1351.

The Cabinet attempts to persuade this Court that even though the questioned exemption does, on its face, directly or indirectly discriminate against interstate commerce, the statute is constitutionally valid because the tax differential is intended to eliminate double taxation. The Court of Appeals determined that this purpose satisfies constitutional limitations, holding that this is a compensatory tax, as that term is defined in the case of *Tyler Pipe Industries, Inc. v. Washington State Department of Revenue,* 483 U.S. 232, 107 S.Ct. 2810, 97 L.Ed.2d 199 (1987). Tax statutes have been upheld, even if a burden on interstate commerce, if they effectively compensate for the variance in costs between interstate and intrastate commerce. *See Armco, Inc. v. Hardesty,* 467 U.S. 638, 104 S.Ct. 2620, 81 L.Ed.2d 540 (1984); *Darnell v. Indiana,* 226 U.S. 390, 33 S.Ct. 120, 57 L.Ed. 267 (1912); *Kidd v. Alabama,* 188 U.S. 730, 23 S.Ct. 401, 47 L.Ed. 669 (1903).

 This Court recognizes that the compensatory tax doctrine is "merely a specific way of justifying a facially discriminatory tax as achieving a legitimate local purpose that cannot be achieved through non-discriminatory means." *Oregon Waste,* —— U.S. at ——, 114 S.Ct. at 1352. Therefore, we will also undertake a similar analysis. The Court of Appeals, relying on *Indiana Department of State Revenue v. Felix,* 571 N.E.2d 287, 291

(Ind.1991), citing *American Trucking Associations v. Scheiner*, 483 U.S. 266, 288, 107 S.Ct. 2829, 2842, 97 L.Ed.2d 226 (1987) (dicta), found that the crucial issues to be determined were "whether (1) substantially equivalent and intrastate and interstate events are being taxed, and (2) the tax produces uniform and equitable treatment of interstate and intrastate commerce." The Court of Appeals referred to *Darnell* and held that the "taxing of shares in corporations whose assets are beyond the reach of taxation by this jurisdiction and the assets of property of those corporations who are greatly concentrated within this Commonwealth has a fair and equalizing impact upon interstate and intrastate commerce."

It is clear to this Court that *Darnell* is directly on point and is dispositive. In that case the United States Supreme Court held that taxing the "property of domestic corporations and stock of foreign ones ... is consistent with substantial equality." *Darnell*, 226 U.S. at 398, 33 S.Ct. at 121. The United States Supreme Court has also held that the taxing of shares in corporations and taxing property of corporations are substantially equivalent events. *Kidd v. Alabama*, 188 U.S. 730, 731, 23 S.Ct. 401, 402, 47 L.Ed. 669 (1903). Therefore this Court holds that the first prong of this test has been met.

Next, we consider whether the tax produces uniform and equitable treatment of interstate and intrastate commerce. Appellant urges this Court to conclude that the exemption statute does not result in equitable treatment by directing us to the cases of *American Trucking Assn. v. Scheiner*, 483 U.S. 266, 284, 107 S.Ct. 2829, 2840, 97 L.Ed.2d 226 (1987), and *Armco Inc. v. Hardesty*, 467 U.S. 638, 644, 104 S.Ct. 2620, 2623, 81 L.Ed.2d 540 (1984). We recognize that these cases could lead us to determine that the second prong of this test cannot be satisfied. However, the controlling case of *Darnell* held that elimination of double taxation was a justifiable and legitimate burden on interstate commerce, and it is this precedent which must control. As a result, we affirm the Court of Appeals as to its holding that the exemption statute is constitutionally valid.

## OTHER ISSUES

We have considered the additional issues raised by both parties, including standing and class certification, and find they merit no further consideration.

## REMEDY

Since the Court of Appeals found both KRS 132.020 and KRS 136.030(1) valid they did not address the question of the appropriate remedy. Upon reviewing the Circuit Court opinion in this matter, we agree with the determination that appellants are entitled to apply for refunds pursuant to KRS 134.590. Moreover, we agree that appellants are entitled to costs and attorney fees, pursuant to KRS 453.260, for the costs and fees pertaining to the challenge of KRS 132.030.

## CONCLUSION

In conclusion, we find that KRS 132.030 violates the commerce clause of the United States Constitution; therefore we reverse the Court of Appeals on this issue. However, we find that KRS 136.030(1) does not violate the commerce clause and we affirm the Court of Appeals on this issue. The determination that KRS 136.030(1) is valid necessarily prohibits this Court from finding that the Commonwealth's *ad valorem* tax scheme, as a whole, is constitutionally invalid.

LEIBSON, REYNOLDS, and STUMBO, JJ., concur.

WINTERSHEIMER, J., files a separate opinion concurring in part and dissenting in part.

FUQUA, J., joins in this opinion.

LAMBERT, J., dissents in a separate dissenting opinion.

WINTERSHEIMER, Justice, concurring in part and dissenting in part.

I concur with that part of the Majority Opinion that holds that the bank deposit tax is clearly in violation of the Commerce Clause of the United States Constitution and is therefore invalid. In addition, the bank deposit tax fails under Section 171 of the

Kentucky Constitution which requires that such a tax must be uniform upon all property in the same class. *See Gillis v. Yount,* Ky., 748 S.W.2d 357 (1988).

In addition, I believe that the tax on corporate shares is also invalid as an unconstitutional exemption prohibited by the Commerce Clause of the Federal Constitution and Kentucky Constitution Sections 3 and 171.

The entire intangible tax system effectively eliminates tax neutral investment decisions and results in improper interference with interstate commerce. The intangibles tax does not provide for balanced burdens upon comparable financial transactions and there is no strict parity between the burden on interstate and intrastate commerce. The Majority Opinion analysis should apply to both the bank deposit tax and to the exemption on corporate shares. The real solution to the problems created by the current intangible tax system should come from the General Assembly.

I would reverse the entire decision of the Court of Appeals and reinstate the judgment of the circuit court.

FUQUA, J., joins in this opinion.

LAMBERT, Justice, dissenting.

Respectfully, I dissent from the majority opinion's conclusion that the Bank Accounts Tax is violative of the Commerce Clause, and I would affirm the Court of Appeals on this issue.

The Court of Appeals held that:

Those who have an account in a Kentucky bank pay a low rate of tax on this intangible, personal property. Those who have an account in a bank outside the state of Kentucky pay a different, higher rate on their intangible, personal property held in that account. Kentucky justified the difference in rates between the classes as reflective of the increased cost of collection for out-of-state accounts. This was precisely the same defense the state adopted in *Madden v. Kentucky,* 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590 (1940).

Our examination of relevant authority leads us to conclude that KRS 132.030 does not violate the commerce clause because there is no interference with Congress' power to regulate interstate commerce. Bank accounts, by their very nature, do not fall into the category of interstate commerce.

Slip opinion at 20–21.

The tax levied is *ad valorem,* a tax solely on the value of bank accounts held by Kentucky taxpayers. Because of the increased cost of collection of taxes on out-of-state deposits, the Commonwealth has a justifiable interest in receiving more revenue from those deposits. The tax does not infringe upon commerce between the states and their citizens, as it is merely one levied by the Commonwealth upon its citizens.